Paul C. SOPER and David N. Daoud, Plaintiffs,

v.

SIMMONS INTERNATIONAL, LTD., Thonet Industries, Inc., and Xenel Industries Ltd., all Corporations, and James A. Riddering, John E. Riederer, Dennis P. Fitzgerald, Manfred J. Sobek, Hisham A. Alireza, Abdullah A. Alireza, Individually, Defendants.

Paul C. SOPER and David N. Daoud, Plaintiffs,

v.

SIMMONS CO., Simmons U.S.A. Corp., and Simmons Universal Corp., Defendants.

Nos. 84 Civ. 0070 (LBS) to 84 Civ. 0072 (LBS).

United States District Court, S.D. New York.

Feb. 27, 1986.

Langan, Grossman, Kinney & Dwyer, P.C., Syracuse, N.Y. (Lisa G. Bradley, of counsel), Norman D. Fiedler, P.C., New York City (Norman D. Fiedler, of counsel), for plaintiffs.

Parker, Auspitz, Neesemann & Delehanty, P.C., New York City, (John M. Delehanty, of counsel), for Simmons Intern., Ltd., Thonet Industries, Inc., James A. Riddering, John E. Riederer, Dennis P. Fitzgerald, Manfred J. Sobek, Simmons Co., Simmons U.S.A. Corp., Simmons Universal Corp.

Shanley & Fisher, P.C., New York City (Arthur R. Schmauder, of counsel), Hale & Dorr, Boston, Mass. (Thomas N. O'Connor, of counsel), for Xenel Industries, Ltd., Hisham A. Alireza, Abdullah A. Alireza.

SAND, District Judge.

Plaintiffs, Paul Soper and David Daoud, filed their complaints in the Northern District of New York in 1983 alleging common law conspiracy to defraud and violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO"). In a Memorandum Decision and Order of December 21, 1983, the Honorable Howard G. Munson, Chief Judge, (1) denied defendants' motion to dismiss plaintiffs' RICO claim for failure to state a claim upon which relief can be granted; (2) denied "without prejudice" all other motions including defendants' motion to dismiss plaintiffs' first cause of action (*id.* at n. 1); and (3) transferred the case to this Court.

On February 13, 1984, Judge Munson denied a motion brought by defendants Xe-

nel Industries, Ltd., Hisham Alireza and Abdullah Alireza (the "Xenel defendants") for reconsideration of their motion for dismissal of the RICO claims. In an Opinion dated May 30, 1984, this Court granted defendants' motion for summary judgment pursuant to F.R.Civ.P. 56 as to plaintiffs' first claim and denied summary judgment as to plaintiffs' second claim, with leave to renew this motion in twenty (20) days. The renewal of defendants' motion was to be limited solely to the question of whether plaintiffs had adequately alleged violation of the mail and wire fraud statutes and injury resulting therefrom.[1]

On August 22, 1984, the case was placed on this Court's suspense docket pending completion of appellate review in a trilogy of Second Circuit cases: *Sedima, S.P.L.R. v. Imrex Co.*, 741 F.2d 482 (2d Cir.1984), *rev'd*, — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *Bankers Trust Co. v. Rhoades*, 741 F.2d 511 (2d Cir.1984, *vacated and remanded*, — U.S. —, 105 S.Ct. 3550, 87 L.Ed.2d 673 (1985); *Furman v. Cirrito*, 741 F.2d 524 (2d Cir.1984), *vacated and remanded sub nom. Joel v. Cirrito*, — U.S. —, 105 S.Ct. 3550, 87 L.Ed.2d 672 (1985). Thus, although defendants renewed their motion in a timely fashion, this Court did not hear oral argument until September 19, 1985, after the case had been returned to its active docket.

In an Order dated November 4, 1985, this Court dismissed plaintiffs' complaint with leave to file within twenty days a new complaint that satisfied the requirements of F.R.Civ.P. 9(b). As noted, plaintiffs had failed to supply any factual basis for the alleged "fraudulent scheme" underlying the mail and wire fraud (18 U.S.C. §§ 1341; 1343) contentions serving as "predicate acts" for their RICO claim. Plaintiffs filed their amended complaint[2] in a timely fashion.

On December 9, 1985, defendants moved pursuant to F.R.Civ.P. 12(b)(6) and 56 for an order dismissing plaintiffs' amended complaint. Defendants allege that (1) plaintiffs' amended complaint also fails to satisfy F.R.Civ.P. 9(b); (2) plaintiffs have not pleaded mail or wire fraud because a scheme to deprive them of an "unenforceable expectation" does not rise to the level of an interest protected by these statutes; (3) plaintiffs have failed to allege an injury to "their business or property by reason of a violation of section 1962," 18 U.S.C. § 1964(c); and (5) plaintiffs have not pleaded a "pattern of racketeering activity" because the alleged predicate acts arise from the same allegedly fraudulent scheme to deprive plaintiffs of their hoped-for commissions. *See generally* Defendants' Joint Memo. of Law.[3] Hisham A. Alireza

---

**1.** This Court noted in its first *Soper* Opinion that Judge Munson's denial of defendants' earlier motion to dismiss plaintiffs' RICO claim for failure to state a claim upon which relief can be granted had become the "law of the case" insofar as Judge Munson had been presented with certain issues. *See Soper v. Simmons International, Ltd.*, 84 Civ. 70; 71; 72, slip op. at 10–14 and accompanying notes. One such issue not put before Judge Munson regarded whether or not plaintiffs had adequately alleged mail and wire fraud allegations. *Id.* at 14 and n. 9; *see also* n. 27 *infra*.

**2.** Plaintiffs actually filed three amended complaints. The underlying litigation has evolved as follows: "In March 1983, plaintiffs commenced two ... actions, one in federal and the other in state court. The federal action later became 84 Civ. 70. The state court action was removed by the Xenel defendants to federal court and eventually became 84 Civ. 71. In May 1983, plaintiffs commenced two more ...

actions against three additional Simmons companies, again bringing one in state and the other in federal court. This second state action was stayed by stipulation of the parties. The other federal action is now No. 84 Civ. 72. All three federal actions were transferred to th[e] Southern [D]istrict [of New York] and consolidated." Defendants' Joint Memorandum of Law in Support of their Motion for Summary Judgment and to Dismiss the Amended Complaint. ("Defendants' Joint Memo. of Law") at 1 n. 1; *see also* note 5 *infra*.

**3.** Defendants also allege that plaintiffs' reasserted state law claim should remain dismissed under the law of the case doctrine. Defendants' Joint Memo. of Law at 16–20. However, plaintiffs have explained in their memorandum of law that these causes of actions were repleaded in their amended complaint to preserve any claim of error that they might wish to assign to earlier rulings in these cases and to avoid any waiver objection raised by their adversaries.

and Abdullah A. Alireza (collectively "the Alirezas") also have renewed their motion, pursuant to F.R.Civ.P. 12(b)(2) and 56, for an order dismissing the now amended complaint against them for lack of personal jurisdiction.[4]

For the foregoing reasons, this Court grants defendants' motion for an order dismissing plaintiffs' amended complaint on the grounds that it fails to satisfy F.R. Civ.P. 9(b). This Court also finds that plaintiffs have failed to adequately plead a "pattern of racketeering activity."

## FACTS

The facts underlying this action already have been elaborated in previous rulings rendered by this Court and by the Northern District of New York. *See, e.g., Soper v. Simmons International, Ltd.,* No. 84–70; 71; 72 (S.D.N.Y. May 30, 1984). Briefly, plaintiffs allege that on February 2, 1977, an agent of the Xenel defendants solicited plaintiffs' services in the procurement of a source of institutional furnishings under a possible joint venture agreement with the Xenel defendants. The plaintiffs identified defendant Thonet Industries, a wholly-owned subsidiary of the defendant Simmons companies, as a possible source of the sought-after merchandise, and then arranged later meetings with Thonet representatives at which the latter expressed interest in this proposal.

At a meeting on February 20, 1977, defendants James A. Riddering, the president of Thonet, and Dennis P. Fitzgerald, a Simmons executive, orally agreed that if an agreement between Thonet and Xenel was consummated, plaintiffs would receive a commission representing 10% of the gross sales generated over a period of ten years. Plaintiff Soper advised them that he had

with him a proposed written commission agreement; however, Mr. Riddering assured him that no writing was necessary "and that there was nothing to worry about for he was dealing with honorable people at Simmons/Thonet." Amended Complaint ¶ 22; *see also* Complaint ¶ 14.[5] As this Court noted in its prior Opinion, plaintiffs alleged that "[t]hese statements were the first of a series of representations that 'were made with the intent to defraud plaintiffs of their commissions.' (Complaint ¶ 26)."

The next day, plaintiffs introduced Riddering and Fitzgerald to the Alirezas, owners of the Xenel Company. While advising plaintiffs that they would honor whatever bargain had been struck, the Xenel defendants "maliciously plotted and schemed to insure that it would be them, not the plaintiffs, who would benefit from the introduction with Simmons/Thonet arranged by the plaintiffs." Plaintiffs' Memo. of Law in Opp. to Joint Motion at 4. Thus, plaintiffs claim that, pursuant to the alleged conspiracy, they were continuously and falsely assured by all the defendants, both orally and in writing, that they would be taken care of, when, in reality, the defendants had arranged to divert compensation to the Xenel defendants and to disavow the bargain plaintiffs had been led to believe existed.

Notwithstanding the Xenel defendants' representations in two telegrams that plaintiffs' presence was not required, plaintiff Daoud attended a meeting defendants had scheduled for April 14 in London for the execution of a contract. At the meeting, defendant Fitzgerald, in the presence and with the assent of defendants Manfred J. Sobek (Vice-President of Marketing of Simmons International, Ltd.) and Hisham

---

Plaintiffs' Memorandum of Law in Opposition to the Joint Motion for Dismissal of the Amended Complaints ("Plaintiffs' Memo. of Law in Opp. to Joint Motion") at 20–21. As such, this Court need not address this particular contention. *See also* Defendants' Reply Memorandum of Law in Support of their Motion for Summary Judgment and to Dismiss the Amended Complaint ("Defendants' Reply Memo.") at 1–2.

4. This Court never previously ruled on the Alirezas' motion to dismiss for lack of personal jurisdiction.

5. References to paragraphs in the amended complaint refer to the complaint in 84 Civ. 70; references to paragraphs in the original complaint also refer to the complaint in 84 Civ. 70.

Alireza, "attempted to disavow the existence of any commission arrangement with the plaintiffs." Amended Complaint ¶ 51. Hisham Alireza, "consciously adopting a less hostile ... approach ... and in furtherance of the scheme and conspiracy to defraud, decided to lull the plaintiffs, stating that he would discuss the matter with Simmons/Thonet and would see that the plaintiffs were protected." Plaintiffs' Memo. of Law in Opp. to Joint Motion at 5. Defendants allegedly repeated these misrepresentations in subsequent conversations. *See* Amended Complaint ¶¶ 53; 55; 58.

The agreement between Simmons/Thonet and Xenel Industries, Inc. was publicly announced on May 6, 1977. Subsequently, these parties in fact entered into an agreement whereby the Xenel defendants would receive 10% commission on gross sales in return for promoting Simmons/Thonet's products in Saudi Arabia. Amended Complaint ¶ 59. Sales have since taken place in Saudi Arabia from which defendants all have allegedly profited; the plaintiffs, on the other hand, have not been paid any commissions. Amended Complaint ¶¶ 60; 66.

## DISCUSSION

Defendants' joint motion to dismiss plaintiffs' amended complaint is based upon F.R.Civ.P. 12(b)(6) and 56. A motion for summary judgment, F.R.Civ.P. 56, may be made solely on the basis of the complaint, in which case the motion is to be treated as the functional equivalent of a motion to dismiss for failure to state a claim under F.R.Civ.P. 12(b)(6). 6 J. Moore, Moore's Federal Practice ¶ 56.11[2] (2d ed.1982). Defendants' motion is thus governed by the standard enunciated in *Conley v. Gibson:* "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). This Court therefore must construe the complaint liberally in favor of the plaintiffs, taking the facts as alleged as true; defendants' motion must be denied if a claim has been pleaded. *See Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985).

### 1. *The Adequacy of Plaintiff's Complaint*

The defendants allege that once plaintiffs' fraud claim is "stripped of all [the] excess verbiage and conclusory allegations" present in the amended complaint, it again fails to satisfy the pleading requirements of F.R.Civ.P. 9(b). *See* Defendants' Joint Memo. of Law at 11–15. Although the amended complaint contains over fifty more paragraphs than the original complaint, some of which catalogue more occasions on which defendants allegedly made false representations, none of these additions demonstrate through specific facts that defendants never intended to honor their alleged promise to pay plaintiffs a commission. Plaintiffs merely allege in a conclusory manner that defendants falsely promised to protect and "take care" of them "in furtherance of one or more agreements, conspiracies and schemes to defraud, and with the intent to defraud and lull the plaintiffs into a false sense of security, postpone discovery and insure inaction on the part of the plaintiffs." *See generally* Amended Complaint.[6]

As noted in *Rich Taubman Associates v. Stamford Restaurant,* 587 F.Supp. 875, 878 (S.D.N.Y.1984), "F.R.Civ.P. 9(b) requires that allegations of fraud be set forth with 'particularity,' ... and the rule applies with equal force to allegations of mail and wire fraud as predicate RICO civil offenses." (Citations omitted).[7] Moreover,

---

**6.** There are slight variations between the original and the amended complaints, but *none of these reveal any new information regarding the underlying factual basis for plaintiffs' claim.*

**7.** *See also Allington v. Carpenter,* 619 F.Supp. 474, 477 (D.C.Cal.1985) (specific intent must be pleaded in an indictment for mail or wire fraud

despite F.R.Civ.P. 9(b)'s caveat that "[m]alice, intent, knowledge, and other condition[s] of mind of a person may be averred generally," courts still have required plaintiffs to provide some factual basis for conclusory allegations as to state of mind. *See Soper v. Simmons International, Ltd.*, No. 84 Civ. 70; 71; 72 (S.D.N.Y. Nov. 4, 1985) (order dismissing complaint with leave to replead) (citing *River Plate Reinsurance Co. v. Jay-Mar Group Ltd.*, 588 F.Supp. 23, 26–27 (S.D.N.Y.1984); *Songbird Jet Ltd. v. Amax, Inc.*, 581 F.Supp. 912, 924–25 (S.D.N.Y.1984); *O'Connor & Associates v. Dean Witter Reynolds, Inc.*, 529 F.Supp. 1179, 1197 (S.D.N.Y.1981)). Thus, plaintiffs make a meritless argument when they assert that their complaint, as governed by the federal pleading rules, adequately pleads scienter.[8]

None "of the facts of which plaintiffs are aware reasonably support their claim that defendants acted with scienter." *Gibbons v. Udaras na Gaeltachta*, 549 F.Supp. 1094, 1124 (S.D.N.Y.1982).[9] Moreover, mere failure of promised performance has never permitted a factual finding that defendants never intended to perform. *Hotel Constructors, Inc. v. Seagrave Corp.*, 574 F.Supp. 384, 387 (S.D.N.Y.1983) (citing

*Cranston Print Works Co. v. Brockmann International A.G.*, 521 F.Supp. 609, 614 (S.D.N.Y.1981) (Conner, J.)). Although one who makes a contractual promise with the undisclosed intention to breach it can be held liable for fraud, proof of such intention must be based on more than a mere showing of nonperformance. *Cauble v. Mabon Nugent & Co.*, 594 F.Supp. 985, 993 (S.D.N.Y.1984); *see also DiRose v. PK Management Corp.*, 691 F.2d 628, 632–33 (2d Cir.1982), *cert. denied*, 461 U.S. 915, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983); *Federal Deposit Insurance Corp. v. Borne*, 599 F.Supp. 891, 895 (E.D.N.Y.1984); *Hotel Constructors, Inc., supra*, 574 F.Supp. at 387; *Sherkate Sahami Khass Rapol v. Henry R. John and Son, Inc.*, 531 F.Supp. 1048, 1061 (S.D.N.Y.1982), *modified on other grounds*, 701 F.2d 1049 (2d Cir.1983). In the instant case, plaintiffs have not articulated anything beyond mere nonperformance.[10]

Plaintiffs also argue that because the *mens rea* requirement of the federal mail and wire fraud statutes is distinguishable from the scienter requirement of common law fraudulent inducement, their allegations sufficiently charge the defendants

---

and the same rule should apply to civil complaints alleging such an offense).

**8.** Plaintiffs had stated in their memorandum of law that "[Rule 9(b)'s] provision for the general averment of intent stands in marked contrast to Rule 3016(b) of New York's rules of civil practice and procedure, which provides for no such general pleading and has been construed to require some particularity in allegations of scienter." Plaintiffs' Memo. of Law in Opp. to Joint Motion at 7 (citations omitted).

**9.** *Compare* instant case *with Gibbons, supra*, where the court held that while plaintiffs had failed to allege facts stating the time, place and nature of the alleged misrepresentations, they had pled facts from which an inference of scienter could be drawn. 549 F.Supp. at 1124. Specifically, defendants' promises had induced substantial reliance on the part of plaintiffs after which "defendants almost immediately and without even a colorable justification ceased performance of their promises." The parties had finalized and executed a Joint Venture Agreement pursuant to which plaintiffs made substantial personal investments as well as adjustments in their own lives, both of which were

exacerbated by the fact that defendants continually failed to live up to their part of the bargain. *Id.* at 1102–04. Plaintiffs ultimately suffered out-of-pocket losses amounting to $510,-000. *Id.* at 1104. On these facts, the *Gibbons* court concluded that "the trier of fact would surely be permitted to draw such an inference of scienter from the abject failure of performance that allegedly occurred here." *Id.* at 1124.

**10.** In *Hotel Constructors, Inc., supra*, for example, facts and contentions found by the court to constitute sufficient evidence beyond mere nonperformance of promises included repeated promises made to plaintiffs related to defendants' work on the hotel when "they already had so many previous contractual commitments requiring them to do similar work that they could not possibly have intended to perform as promised." 574 F.Supp. at 388. The court also emphasized that this particular contention in itself was not conclusory, but, rather, supported by more detailed allegations in the complaint. *Id.* at 388 & n. 2; *see also Cauble v. Mabon Nugent & Co., supra*, 594 F.Supp. at 993–94.

with fraudulent intent. Plaintiffs' Memo. of Law in Opp. to Joint Motion at 7–10. In other words, because "[t]he intent element under the federal statutes is that the defendant[s] willfully, knowingly or intentionally devised, joined, participated in or executed a scheme that at least contemplated or had as its objective some harm or injury" (*id.* at 7, *citing United States v. London,* 753 F.2d 202, 205–07 (2d Cir.1985); *United States v. Panza,* 750 F.2d 1141, 1149 (2d Cir.1984), etc.), plaintiffs allege that whether any representation was made with a fraudulent intent should not be the focal point of this Court's inquiry. Besides, they also contend that in their case, fraudulent intent can be inferred from a host of sources—*e.g.,* from the fact that the scheme resulted in actual harm or injury; from lulling and other guilty actions; from a contract that is the product of a scheme to defraud; etc. *See* Plaintiffs' Memo. in Opp. to Joint Motion at 8–9.

Despite plaintiffs' contentions, however, "the term 'scheme to defraud' connotes some degree of planning by the perpetrator[s], [making] it [ ]essential that the evidence show the defendant[s] entertained an intent to defraud." *United States v. McNeive,* 536 F.2d 1245, 1247 (8th Cir. 1976); *see also United States v. Gelb,* 700 F.2d 875, 889 (2d Cir.), *cert. denied,* 464 U.S. 853, 104 S.Ct. 167, 78 L.Ed.2d 152 (1983); *United States v. Von Barta,* 635 F.2d 999, 1005–06 n. 14 (2d Cir.1980), *cert. denied,* 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981). Again, nothing in plaintiffs' amended complaint manifests such fraudulent intent. *See Rojas v. First National Bank Association,* 613 F.Supp.

968, 971 (E.D.N.Y.1985) (plaintiff's failure to adduce facts supporting a finding of fraud warranted dismissal of plaintiff's civil RICO claim) and n. 12 *infra.*[11]

### 2. *Pattern of Racketeering Activity*

■ Even if plaintiffs had satisfied F.R. Civ.P. 9(b),[12] defendants still would prevail, warranting dismissal of plaintiffs' amended complaint. To state a claim for a civil RICO violation, plaintiffs must prove that they were injured in their business or their property by reason of defendants' conduct of an enterprise through a "pattern of racketeering activity." *Rojas, supra,* 613 F.Supp. at 971 (citing *Sedima, S.P.L.R. v. Imrex Co.,* —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)); *see also* 18 U.S.C. § 1964(c). While rejecting the requirements of prior criminal convictions and of a special RICO injury, the Supreme Court in *Sedima* acknowledged the "increasing divergence" between civil RICO and the "original conception of its enactors," and blamed this, in part on "the failure of Congress and the courts to develop a meaningful concept of 'pattern'".[13] The Court stressed that "the definition of a 'pattern of racketeering activity' differs from the other provisions in § 1961 in that it states that a pattern *'requires* at least two acts of racketeering activity,' Section 1961(5) (emphasis added), not that it 'means' two such acts. The implication is that while two acts are necessary, they may not be sufficient." *Sedima,* 105 S.Ct. at 3285, n. 14. The Court also quoted legislative history indicating that it is " *'continuity plus relationship* [that] combines to produce a pat-

---

**11.** *See also Kredietbank N.V. v. Joyce Morris, Inc.,* No. 84–1903 (D.N.J. Oct. 11, 1985) (available on Lexis, Genfed Library, Dist. file); *Allington v. Carpenter, supra,* 619 F.Supp. at 476–77.

**12.** Defendants have raised other contentions regarding the substantive elements of the predicate acts underlying plaintiffs' RICO claim. *See* text at 246 *supra*; *see also* Defendants' Joint Memo. of Law at 16–24. Because this Court finds that dismissal is appropriate under the first and fourth grounds alleged by defendants, however, it need not address defendants' other allegations.

**13.** Interestingly enough, the Court also pointed to the breadth of the predicate offenses as a factor contributing to this phenomenon and specifically mentioned the inclusion of the predicate acts at issue in the instant case—mail and wire fraud. 105 S.Ct. at 3287. *See also* Abrams, *The Civil RICO Controversy Reaches the Supreme Court,* 13 Hofstra L.Rev. 147, 153 n. 31 ("prior to 1985, 77% of all civil RICO cases at the trial court level involved securities, mail or wire fraud in a commercial setting") (citation omitted).

tern.' " *Id.* (quoting S.Rep. No. 91–617, p. 158 (1969) (emphasis added)).[14]

As was predicted, *Sedima* has brought to the forefront a new focus in civil RICO litigation—the "pattern of racketeering activity" requirement. *See* Nathan & Bograd, RICO Litigation's New Battleground: "Pattern" and "Enterprise," CIVIL RICO LITIGATION after *Sedima*, ALI–ABA Video Law Review 145, 145 (Oct. 10, 1985). One of the first post-*Sedima* cases [15] to take to this challenge was *Northern Trust Bank/O'Hare, N.A. v. Inryco Co., Inc.,* 615 F.Supp. 828 (N.D.Ill.1985).[16] In *Inryco,* plaintiff's complaint specified two mailings that were made in connection with defendant's and others' construction contract kickback scheme. *Id.* at 833. The court held that, as per *Sedima,* plaintiff had failed to establish a "pattern of racke-

teering activity." *Id.* Judge Shadur reasoned that:

"[P]attern" ... connotes a multiplicity of events. Surely the continuity inherent in the term presumes repeated criminal *activity,* not merely repeated *acts* to carry out the *same* criminal activity. It places a real strain on the language to speak of a single fraudulent effort, implemented by several fraudulent acts, as a "pattern of racketeering activity."

*Id.* at 831 (emphasis in original). He further noted that "even if the three added kickback payments alleged in [plaintiff's] Complaint ¶ 15 involved the use of the mails, they still implemented the *same* fraudulent scheme as the first two mailings—and the single scheme does not appear to represent the necessary 'pattern of racketeering activity.' " *Id.* (emphasis in original).[17]

---

**14.** Even Justice Powell's dissent noted that "the presence of the predicate acts is only the beginning; something more is required for a 'pattern' to be proved." 105 S.Ct. at 3289–90 (Powell, J., dissenting). In order to effectuate legislative intent, Justice Powell contended that a plaintiff must plead and prove that (1) the racketeering acts are somehow related, (2) they are part of a common scheme, and (3) there is either some sort of continuity between the acts or a threat of continuing illegal activity. *Id.* at 3290 (citing *Report of the Ad Hoc Civil RICO Task Force,* 1985 A.B.A. Sec.Corp. Banking & Bus.Law 55, 193–208); *see also* text as 252–54 *infra.*

**15.** Two leading pre-*Sedima* cases on this issue are *Teleprompter of Erie, Inc. v. City of Erie,* 537 F.Supp. 6 (W.D.Pa.1981) (alleged multiple bribes at one fundraiser did not constitute pattern of racketeering activity) and *Exeter Towers Associates v. Bowditch,* 604 F.Supp. 1547, 1554 (D.Mass.1985) ("connotations of a 'pattern of racketeering activity,' as that phrase is used in the RICO statute, are not satisfied by proof that, in effectuating the purchase of a single mortgage, the defendants committed two or more acts of mail fraud"). Moreover, in *United States v. Moeller,* 402 F.Supp. 49 (D.Conn.1975), Judge Newman observed that "[t]he common sense interpretation of the word 'pattern' implies acts occurring in different criminal episodes, that are at least somehow separated in time and place, yet still sufficiently related by purpose to demonstrate a continuity of activity." *Id.* at 57–58. However, this was mere dictum because the court was bound by the Second Circuit's decision in *United States v. Parness,* 503 F.2d 430, 441–42 (2d Cir.1974), *cert. denied,* 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975) (exist-

ence of pattern can be found where predicate acts occur in single criminal episode).

**16.** A post-*Sedima* case decided prior to *Northern Trust, Rojas v. First National Bank Ass'n, supra,* stated in a footnote that even if plaintiff had adduced facts to support a finding of fraud, he would not have prevailed due to his failure to demonstrate a "pattern of racketeering activity." 613 F.Supp. at 971 n. 1. The plaintiff, a physician, had alleged that the defendant had fraudulently induced him to execute a guaranty and a note, and had negligently approved the underlying loans. *Id.* at 969. The court noted that "[s]everal isolated acts ... do not a pattern make" and that "a showing of at least two acts of racketeering activity and the threat of continuing activity" was required. *Id.* at 971 n. 1 (citing *Sedima,* 105 S.Ct. at 3285 n. 14).

Interpretations of this aspect of *Rojas* vary. At least one commentator views it as reaching a result similar to the one reached in *Inryco, infra.* Saltzburg, *Standards of Pleading and Proof,* CIVIL RICO LITIGATION after *Sedima,* ALI–ABA Video Law Review 127, 135 (Oct. 10, 1985). Another commentator has noted that *"Rojas'* apparent requirement of a threat of continuing activity differs rather markedly from the notion that a pattern should embrace some continuity among the predicate acts." Kaplan, *Civil RICO after Sedima: An Overview,* CIVIL RICO LITIGATION after *Sedima,* ALI–ABA Video Law Review 41, 78 (Oct. 10, 1985). The plaintiffs have indicated yet another interpretation of *Rojas'* "pattern" language. *See* n. 21 *infra.*

**17.** Because the Supreme Court did not have to address the "pattern of racketeering activity"

Many other courts have followed suit. In *Professional Assets Management, Inc. v. Penn Square Bank, N.A.*, 616 F.Supp. 1418 (W.D.Okl.1985), civil RICO claims based upon defendant accounting firm's (Peat, Marwick, Mitchell & Co.) preparation and issuance of the December 31, 1981 audit report were held "not [to be] based on a 'pattern', as that term was elaborated in *Sedima* and *Inryco*, but [to] arise[] simply from one engagement to perform one audit...." *Id.* at 1422.[18] The court thus denied plaintiff's motion to vacate its pre-*Sedima* order dismissing these claims. *Id.* at 1422. In *Allington v. Carpenter*, 619 F.Supp. 474 (C.D.Cal.1985), the district court held that each act of wire fraud alleged in the complaint was part of the same criminal transaction: "a telephone call to induce [plaintiff] to send $100,000 to Switzerland, on the understanding the the [sic] money plus a finder's fee would be delivered a short time later to the Grand Cayman Islands; [plaintiff]'s wiring of the money to Switzerland the next day; and a telephone call six weeks later to the Grand Cayman Islands to set up the account into which the money was to be transferred." *Id.* at 478. Noting that the legislative history revealed an intent to exclude from RICO liability single criminal events, the *Allington* court concluded that "a 'pattern' of racketeering activity must include racketeering acts sufficiently unconnected in time or substance to warrant consideration as separate criminal episodes." *Id.*

In *Kredietbank N.V. v. Joyce Morris, Inc.*, (D.N.J. Oct. 11, 1985), the district court concluded that "in light of this clarification offered by *Sedima*, ... the mere allegation of two instances of submitting a false affidavit to a court in connection with a single matter under litigation does not, without more, constitute a pattern of racketeering activity." The court noted that while an enterprise that made a practice of submitting false affidavits in lawsuits might very well indicate a pattern of unlawful activity, such actions in the context of a single lawsuit "do not necessarily constitute a 'pattern' ... as contemplated in RICO because the end of the litigation will spell the limit of the enterprises' fraudulent scheme." *Id.*[19]

As noted by one of the most recent "pattern" cases, however, *Fleet Management Systems, Inc. d/b/a Logistic Systems v. Archer-Daniels-Midland Co.*, 627 F.Supp. 550 (C.D.Ill.1986), "many courts continue to hold that *Sedima*'s broad language mandates a conclusion that any two related acts can constitute a pattern." *See Conan Properties, Inc. v. Mattel, Inc.*, 619 F.Supp. 1167, 1170 (S.D.N.Y.1985) (plaintiff who had alleged copyright infringement of its fictitious character, CONAN THE BARBARIAN, had adequately met "pattern of racketeering activity" pleading requirement by alleging two related and sufficiently particularized predicate acts arising out of the same scheme); *see also R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350, 1355 (5th Cir.1985) (while district court had not considered "pattern" issue, court of appeals noted that *Sedima* merely indicated that the two predicate acts needed to be related, and in this case, where defendants

---

requirement, *Sedima* "spoke in dictum" regarding this particular issue. *See Inryco, supra*, 615 F.Supp. at 832. Nonetheless, lower courts, like the district court in *Inryco*, have heeded *Sedima's* message and focused on the "pattern" requirement in order to reach definitive conclusions regarding the adequacy of the RICO claims pleaded before them. *See generally* text *infra*.

**18.** Plaintiff had alleged that the defendants had "employed the mails and wire or telephonic communications in interstate commerce on more than one occasion in order to execute such schemes or artifices, in violation of 18

U.S.C. sections 1341 and 1342." 616 F.Supp. at 1421.

**19.** *See* text at 253–55 *infra* and accompanying notes; *see also International Television Productions, Ltd. v. Twentieth Century-Fox Television Division*, 622 F.Supp. 1532, 1541 n. 13 (S.D.N.Y.1985) (court granted plaintiffs' application to add RICO claim but noted that facts alleged did not appear to establish "pattern of racketeering activity"); *Lipin Enterprises, Inc. v. Lee*, 625 F.Supp. 1098 (N.D.Ill.1985) (available on Lexis, Genfed Library, Dist. file); *Morgan v. Bank of Waukegan*, 615 F.Supp. 836, 838 (N.D.Ill. 1985).

allegedly attempted to defraud company by twice mailing it false invoices regarding ownership and repair of certain equipment, the alleged acts of mail fraud were related); [20] *Alexander T. Grant & Co. v. Tiffany Industries, Inc.*, 770 F.2d 717, 718 n. 1 (8th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 799, 88 L.Ed.2d 776 (1986); *Systems Research, Inc. v. Random, Inc.*, 614 F.Supp. 494, 497 (N.D.Ill.1985).[21] However, none of these cases discuss the points raised in *Inryco, supra*, nor provide elaborate reasoning to support the conclusions reached regarding their interpretations of *Sedima*.

Nonetheless, plaintiffs claim these decisions support their contention that "the Supreme Court merely intended in *Sedima* to reassert what it already had made clear in [*United States v.*] *Turkette* [452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)] and what has been the well-settled law in th[e] [Second] Circuit for several years, that is, that 'two *isolated* acts of racketeering activity do not constitute a pattern.'" Plaintiffs' Memo. of Law in Opp. to Joint Motion at 18 (quoting *Sedima, supra*, 105 S.Ct. at 3285 n. 14); *see also United States v. Chovanec*, 467 F.Supp. 41 (S.D.N.Y. 1979); *United States v. Stofsky*, 409 F.Supp. 609 (S.D.N.Y.1973), *aff'd on other grounds*, 527 F.2d 237 (2d Cir.1975), *cert. denied*, 429 U.S. 819, 97 S.Ct. 65, 50

L.Ed.2d 80 (1976). However, as pointed out by the *Inryco* court, this line of cases was only partly correct: "True, enough, 'pattern connotes similarity, hence the[se] cases' proper emphasis on relatedness of the constituent acts. But 'pattern' also connotes a multiplicity of events[.]" *Inryco, supra*, 615 F.Supp. at 831; *see also* text at 11 *supra*.

■ The *Inryco* decision, considered to be "the most thorough post-*Sedima* decision of the 'pattern' issue," *Graham v. Slaughter*, 624 F.Supp. 222 (N.D.Ill.1985), has been criticized to the extent that it suggests that in order to find a pattern of racketeering activity, a pattern of fraudulent schemes must be pled. *See, e.g., Trak Microcomputer Corp. v. Wearne Brothers*, 628 F.Supp. 1089 (N.D.Ill.1985).[22] This portion of the decision, however, which is mere dictum, has been clarified by subsequent cases—to be "continuous" requires *more than* a single transaction, not necessarily more than a single scheme. *Graham v. Slaughter, supra*, at 225.[23] In other words, "while a RICO claim must involve different criminal episodes, *i.e.*, transactions 'somewhat separated in time and place,' … an open-ended scheme may include a sufficient number of independent episodes to satisfy the 'continuity' factor of *Sedima*." *Id.* at 225 (citation omitted). In

---

**20.** In *Papagiannis v. Pontikis*, 108 F.R.D. 177, 179 (N.D.Ill.1985), Judge Shadur (*see* text at 251 *supra*) noted that the "pattern" requirement, "despite the Supreme Court's signposts in *Sedima*," continued to be misconstrued: "In … light [of *Sedima*'s message], it is startling to read such an opinion as that just written by one of the elder statesmen of the federal judiciary, Senior Circuit Judge John Minor Wisdom, *R.A. G.S. Couture, Inc.*, … [T]he opinion wholly ignores the concept of continuity emphasized by Congress and the Supreme Court." 108 F.R.D. at 179 n. 3.

**21.** Plaintiffs also allege that *Rojas, supra*, supports this interpretation of *Sedima*. *See also* note 16 *supra*.

**22.** As noted at p. 251, *supra*, Judge Shadur observed in *Inryco* that even if three additional kickback payments had involved the mails, they still had implemented the same fraudulent scheme and therefore did not represent the nec-

essary "pattern of racketeering activity." The *Trak* court concluded that nothing in the language of *Sedima* suggested such a result; because plaintiffs had alleged that defendants had engaged in at least two acts of mail and wire fraud which were continuous over an identified period of time and which were related to one another in furtherance of the allegedly fraudulent scheme to defraud plaintiffs and illegally obtain microcomputer technology from them, they had satisfied the continuity plus relationship standard of *Sedima*. *Trak Microcomputer Corp., supra*, slip op. at 1095.

**23.** In fact, guidelines prepared by the Justice Department five years before *Sedima* was filed provided that no indictment should be based upon a pattern of racketeering activity growing out of a single criminal episode or transaction. Guideline 9–110.340 (cited in Saltzburg, *Standards of Pleading and Proof*, CIVIL RICO LITIGATION after *Sedima*, ALI–ABA Video Law Review 127, 127 (Oct. 10, 1975)).

contrast, an isolated criminal episode, even if it is accomplished through a number of fraudulent acts, neither evidences a threat of continuing criminal activity nor the involvement of an organized criminal enterprise. *Fleet Management Systems Inc., supra,* at 559.[24]

■ As applied in *Graham v. Slaughter, supra,* this clarified definition of the "pattern" requirement led the district court to deny plaintiff's motion to dismiss defendant's RICO counterclaim. Defendant had based his counterclaim on plaintiff's embezzlement of funds from two corporations. The primary mechanism by which plaintiff embezzled the funds was through a series of wire transfers and checks drawn on the accounts, made payable to the plaintiff or the company he controlled. *Id.* at 224. As noted by the court:

> "The present complaint alleges over twenty predicate acts stretched out over a two year period. Each of the acts involved the same or similar purpose, thus meeting the 'relatedness' requirement. The fraud was clearly ongoing, and it involved at least three different

third parties: the two corporations controlled by [plaintiff] and an advertising agency whose invoices were fraudulently redirected to [one of the corporations]. Unlike the case in *Inryco,* the predicate acts alleged are not ministerial acts performed in the execution of a single fraudulent scheme, but appear to be independently motivated crimes."

*Id.* at 225.[25]

This Court is of the opinion that the correct interpretation of the "pattern" requirement as articulated by *Sedima* and its progeny requires more than two related acts.[26] The acts alleged by plaintiff as predicate acts do not meet these requirements of a "pattern"—as in *Inryco,* they are merely "ministerial acts performed in the execution of a single [allegedly] fraudulent scheme" (*Graham, supra,* at 225) to deprive plaintiffs of their promised commission. As such, plaintiffs have failed to establish " 'some sort of continuity between the acts or a threat of continuing criminal activity,' " *Fleet, supra,* at 557 (quoting ABA Report, *supra* note 14, at

24. As noted by the *Graham* court, *supra,* Judge Shadur himself appears to have since retreated from this dictum. In *United States v. Yonan,* 622 F.Supp. 721 (N.D.Ill.1985), Judge Shadur would not dismiss a RICO count that charged the defendant with multiple acts of bribery despite the fact that the defendant was alleged to have made all of the payments to one person. *Id.* at 728. He observed that "the payments were assertedly made to fix a whole series of criminal cases in the Cook County Circuit Court. Those separate acts of bribery to fix ten separate cases, involving as many different defendants, contrast sharply with the mailing of more than one letter to implement a single kickback scheme (the situation in *Inryco*)." *Id.; see also Papagiannis v. Pontikis, supra,* 108 F.R.D. at 179.

25. In *Fleet Management Systems, Inc., supra,* the court found that plaintiff had failed to establish the required "pattern" in alleging that defendants had committed a number of mail and wire fraud violations in furtherance of a scheme to obtain computer information from plaintiff in order to market it under a different name. *Id.* at 560. The *Fleet* court concluded that only one criminal episode was involved, "the alleged scheme to illegally market plaintiff's computer program under a different name," which did not "give rise to any inference that a criminal enter-

prise [wa]s involved in the alleged fraud" or evidence "a threat of ongoing criminal activity." *Id.* at 560.

26. *See Abrams, supra* note 13, at 184 & n. 207, which indicates that it would serve both the spirit and the letter of the law to utilize a definition of "pattern" that would require multiple acts occurring in two or more separate criminal episodes, a definition that "could lead to a weeding out of some of the more tenuous claims brought under the statute." *See also The Supreme Court, 1984 Term,* 99 Harvard L.Rev. at 320–21 ("a stricter interpretation of the 'pattern' requirement could ... foreclose the use of RICO against sporadic instances of commercial fraud while still allowing the statute to reach continuing racketeering activity designed to harm, infiltrate, or corrupt legitimate businesses' "); Note, *Civil RICO and "Garden Variety" Fraud—A Suggested Analysis,* 58 St. John's L.Rev. 93, 127 (1983) (pre-*Sedima* suggestion that "suits which rely merely on two or more common law frauds conducted through an enterprise, albeit with the use of the mails or the wires, should be dismissed as outside the scope of the [civil RICO] statute").

·193–208), and their amended complaint must be dismissed.[27]

Because this Court grants defendants' joint motion to dismiss plaintiffs' amended complaint on the above grounds, it need not address the Alirezas' motion for an order dismissing the complaint against them for lack of personal jurisdiction.

SO ORDERED.

---

**27.** As noted earlier, this Court determined in its first *Soper* Opinion that the "law of the case" doctrine applied to Judge Munson's denial of defendants' motion to dismiss plaintiffs' RICO claim. *See* n. 1 *supra.* However, the law of the case may be disturbed "whe[n] there has been subsequent, superseding and contrary legal authority, or where there is a clear conviction of error with respect to the earlier ruling." *Id.* at 10–11 (citing *Zdanok v. Glidden Co.,* 327 F.2d 944, 952–53 (2d Cir.), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964); *O'Hagan v. Soto,* 565 F.Supp. 422, 426–27 (S.D.N.Y.1983), *rev'd on other grounds,* 725 F.2d 878 (2d Cir.

1984); *Erie Conduit Corp. v. Metropolitan Asphalt Paving,* 560 F.Supp. 305, 307–08 (E.D.N.Y. 1983). Certainly, *Sedima* provides controlling authority that has since made a contrary decision of law applicable to the adequacy of a RICO claim. *See O'Hagan, supra,* at 427 (quoting *White v. Murtha,* 377 F.2d 428, 431 (5th Cir.1967)). Thus, this Court's decision to herein analyze the "pattern" requirement is not an abuse of its discretion. *See id.* at 426 ("[t]he doctrine is not inexorable or absolute but is a discretionary doctrine"). In any event, the "pattern" issue was not raised before Judge Munson.