Donald ROSS and Victoria J. Ross, Plaintiffs,

v.

Richard E. BOLTON, R.E. Bolton & Company, Inc., Forbes, Walsh, Kelly & Co., Inc., and Bear, Stearns & Co., Defendants.

No. 83 Civ. 8244 (WK).

United States District Court, S.D. New York.

June 10, 1986.

See also 106 F.R.D. 315.

**324**

Lawrence Iason, Obermaier Morvillo & Abramowitz, New York City, for plaintiffs.

John P. Hale, Thomas A. Rigilano, Gusrae Kaplan & Bruno, Jerome Kowalski, Clifford R. Saffron, Finley Kumble Wagner Heine Underberg Manley & Casey, New York City, for defendants.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

All defendants move to dismiss the amended complaint. The Bolton defendants and Bear, Stearns & Co. move as well to dismiss the cross-claims of defendant Forbes, Walsh, Kelly & Co., Inc. For the reasons stated below, we direct that the complaint against Bear Stearns and Forbes Walsh Kelly's third counter-claim against the Bolton defendants be dismissed.

This is the second time we have considered motions to dismiss in this action. We failed the first time to perceive a cognizable claim against Bear Stearns and by order dated April 20, 1984 dismissed the complaint and cross-claims against it while granting plaintiffs leave to replead. The parties have moved against the amended complaint.

Plaintiff Donald Ross is a Canadian. Plaintiff Virginia Ross is his daughter. They allege that all defendants participated in an illegal manipulation of the securities of the Resort Urban Timesharing Corporation ("RUTI"). Richard E. Bolton and the company in which he was the principal, R.E. Bolton & Company, Inc. (the "Bolton defendants"), were the alleged masterminds and Bear Stearns & Co. an alleged aider and abettor in this fraudulent scheme.

The amended complaint claims that the Bolton defendants initiated a series of purchases and sales in which they were positioned as both seller and buyer. That is, they successively sold RUTI securities to various investors, and within a few days bought the stock back at a higher price than that at which they sold it. At times the stock passed through the hands of one or two intervening parties prior to returning to them; however, at each stage of the transaction, the price of the securities was raised. Plaintiffs claim that, through this device, the Bolton defendants managed to drive up the price of the stock artificially, from $6 per unit at the time it was issued in August 1981, to 17⅞ bid—18⅛ ask on December 20, 1982. Through this period, the corporation had no earnings.

To illustrate the way in which the manipulation occurred, plaintiffs have pled 41 factual instances of Bolton's sale and repurchase transactions over the period between September 13, 1981 and December 16, 1982 which involved entities not party to this lawsuit. Each transaction shows the trade date, seller, number of units sold, customer, and price of purchase or sale. These examples reveal that over this 16 month period, the price per unit of RUTI securities rose from 14 to 18, and that Bolton positioned itself as the seller and buyer with between one to three intervening parties. The amount of time between each sale and repurchase ranged from four to twenty days.

Bear Stearns was the clearing agent for these transactions. It had loaned money to

Bolton which was collateralized by securities owned by Bolton. At various times during the period between August 1981 and December 1982, the value of these securities was substantially less than the amount of collateral required for the loans. Bolton's account with Bear Stearns was therefore under margin. Because it was under margin, plaintiffs claim that Bear Stearns must have scrutinized the account more closely than it otherwise would have.

During December, 1982, Bear Stearns cancelled a number of trades in which Bolton was purchasing securities but continued to execute transactions in which Bolton was the seller. By this means, Bear Stearns allegedly reduced the amount of money Bolton & Co. owed to it. The amended complaint charges that, in light of the dramatic rise in RUTI securities, as well as Bear Stearns' greater scrutiny of the Bolton defendants' account, it knew or should have known of the alleged fraud and aided and abetted the manipulation by clearing transactions, often after the market had closed.

Plaintiffs' specific injury arose out of their uncompleted participation in one of the Bolton defendants' alleged manipulations.

Donald Ross was an employee of a securities firm. On December 14, 1982, Bolton told him by telephone that he needed to sell 26,900 units of RUTI securities immediately, and that another purchaser wanted them but could not complete the transaction on time. He suggested that, if Ross bought them, the other purchaser would buy them from Ross.

On December 15, Ross spoke with John Walsh, a principal at Forbes Walsh Kelly. Walsh told him that Forbes Walsh would purchase the 26,900 RUTI units from him for $18.00 per unit.

Ross consequently purchased the units. He bought them in his daughter's name at $17.50 per unit. Bear Stearns cleared the transaction.

Forbes Walsh had agreed to purchase the securities from Ross on December 22.

On that day, however, Forbes Walsh refused to perform. When Ross asked why, Walsh told him that Bolton had agreed to purchase the stock from Forbes Walsh for $18½ per unit but had cancelled the transaction. Because Forbes Walsh could not resell to Bolton, it refused to purchase from Ross.

Until this conversation, Ross had not known that Bolton was on both sides of the transaction. Until this time, Forbes Walsh had not known that fact either.

On December 20, RUTI's price per unit was 17⅞ bid—18⅛ ask. On December 24, or two days after Forbes Walsh refused performance, the price was 5¼ bid—5¾ ask.

Plaintiffs charge the Bolton defendants and Bear Stearns with violating section 10 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5; with violating the provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., for common law fraud, and with violating section 352–c of the New York General Business Law. They sue Forbes Walsh for breach of contract. Forbes Walsh cross-claims against the Bolton defendants and Bear Stearns for stock fraud and breach of contract, as well as for indemnity in the event it is found liable to plaintiffs for breach of contract.

## DISCUSSION

### Motion to Dismiss under FRCP 9(b)

The Bolton defendants and Bear Stearns move to dismiss the securities law claims on the ground that the amended complaint fails to plead fraud with particularity in accordance with the requirements of Rule 9(b).

The purpose of Rule 9(b) is threefold. It is meant to assure a defendant of fair notice of what the plaintiff's claim is and the ground upon which it rests. It seeks to protect a defendant from the harm that would befall its goodwill when it is charged with serious wrongdoing. Finally, and es-

pecially in the securities context, it is meant to diminish the possibility that a plaintiff with a largely groundless claim will be able to use the threat of extensive discovery to impose an in terrorem increment on a settlement value. *Ross v. A.H. Robins*, (2d Cir.1979) 607 F.2d 545, 557, *cert. denied*, (1980) 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802.

Section 10(b) makes it "unlawful for any person ... to use or employ ... any manipulative or deceptive device or contrivance in contravention of" Securities and Exchange Commission rules. The proscribed manipulation "refers generally to practices ... that are intended to mislead investors by artificially affecting market activity." *Santa Fe Industries, Inc. v. Green*, (1977) 430 U.S. 462, 476, 97 S.Ct. 1292, 1302, 51 L.Ed.2d 480. Rule 10b–5 prohibits any "artifice to defraud" or any act "which operates or would operate as a fraud or deceit," as well as the nondisclosure or misrepresentation of material facts in connection with the purchase or sale of a security.

Plaintiffs complain that defendants acted fraudulently by positioning themselves on both sides of the sale of RUTI securities to them, and by failing to reveal this fact. They claim that they were only one victim in an ongoing scheme to produce an artificial increase in the price of RUTI securities and cite specific examples of the scheme.

■ These allegations clearly charge the Bolton defendants with an attempt at "artificially affecting market activity in order to mislead investors," *Santa Fe Industries, supra*, 430 U.S. at 477, 97 S.Ct. at 1302; *see Crane Company v. Westinghouse Air Brake Company*, (2d Cir.1969) 419 F.2d 787, *cert. denied*, (1970) 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50; *Landy v. Federal Deposit Insurance Corp.*, (3d Cir.1973) 486 F.2d 139, 161, *cert. denied* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974) (a scheme deliberately calculated to manipulate market value of stock violates the securities laws), and with enough specificity to meet the requirements of Rule 9(b).

As to the materiality and reliance aspects of the Bolton defendants' alleged failure to

inform plaintiffs that they were both the seller and contemplated purchaser of the securities, we could not say as a matter of law that such information could not have been material to the plaintiffs and that with it they would nevertheless have proceeded with the transaction. We therefore decline to dismiss the securities law claims against the Bolton defendants.

It follows that we must also deny the Bolton defendants' motions to dismiss the common law and New York General Business Law fraud claims which raise the same questions.

Bear Stearns argues that the allegations are insufficient to charge it with aiding and abetting the Bolton defendants' fraud.

■ There are three requirements for imposition of aider and abettor liability in this Circuit. Plaintiff must prove 1) a securities law violation by a primary wrongdoer; 2) knowledge of the violation by the person sought to be charged; and 3) that such person substantially assisted the primary wrongdoing. *Armstrong v. McAlpin*, (2d Cir.1983) 699 F.2d 79, 91.

We have found that a securities law violation by a primary wrongdoer—the Bolton defendants—has been pled.

As to scienter, Bear Stearns' alleged reckless disregard of the facts might suffice if it had owed a fiduciary duty to the plaintiff. *Armstrong v. McAlpin, supra*, at 91; *IIT, An International Investment Trust v. Cornfeld*, (2d Cir.1980) 619 F.2d 909, 923. Such reckless disregard would have to amount to conduct which is " 'highly unreasonable' and which represents 'an extreme departure from the standards of ordinary care ... to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.' " *Rolf v. Blyth, Eastman Dillon & Co., Inc.*, (2d Cir.1978) 570 F.2d 38, 47 (citation omitted).

■ Although it could obviously be argued to the contrary, we assume for present purposes that this standard of recklessness has been met. However, it

could not be said that Bear Stearns owed a fiduciary duty to plaintiffs. *Edwards & Hanly v. Wells Fargo Securities Clearance Corp.,* (2d Cir.1979) 602 F.2d 478, 484, *cert. denied,* (1980) 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 ("... a clearing agent is generally under no fiduciary duty to the owners of securities which pass through its hands."). "If there is no fiduciary duty, the 'scienter' requirement scales upward— the assistance rendered should be both substantial and knowing," *ibid.,* such that plaintiffs have the additional burden of establishing that Bear Stearns acted with "something closer to an actual intent to aid in a fraud," *ibid.,* or "scienter of the high 'conscious intent' variety ...". *IIT, supra,* 619 F.2d at 925.

In attempting to meet this burden, plaintiffs allege that several factors caused Bear Stearns to know that the Bolton defendants were defrauding them. These factors were that the agent cleared a large number of transactions in RUTI securities, there was a dramatic rise in the price of the securities, Bear Stearns had made a loan of money under margin to the Bolton defendants, and had selectively executed trades in December of 1982 in order to reduce the amount owed. We cannot find that these allegations, taken together and construed most favorably to plaintiffs, suffice to meet their burden.

Nor do we find that the complaint adequately alleges substantial assistance by Bear Stearns in the commission of the primary fraud. The complaint does not specify what assistance Bear Stearns rendered other than to continue to clear transactions when it "knew or should have known" that the Bolton defendants were rigging the price of RUTI securities. "Awareness and approval, standing alone, do not constitute substantial assistance." *Armstrong, supra,* 699 F.2d at 92; *Dickens, et al. v. Chemical Bank,* (S.D.N.Y.1983) 573 F.Supp. 1129, 1132. Nor does "inaction on

the part of the alleged aider and abettor...., except when it was designed intentionally to aid the primary fraud or it was in conscious and reckless violation of a duty to act." *Armstrong, supra,* 699 F.2d at 91; *IIT, supra,* 619 F.2d at 925–926. As there was no duty to act, and as plaintiff has failed adequately to allege sufficient intention to aid the primary fraud, we find that the complaint does not meet the "substantial assistance" requirement.

We accordingly dismiss with prejudice the securities law claims against Bear Stearns, as well as the fraud claims brought under common law and pursuant to section 352–c of the New York General Business Law, and the RICO claims which allege as predicate acts Bear Stearns' violation of the securities laws. Forbes Walsh Kelly's claims that Bear Stearns violated the securities laws, premised on the allegations of the amended complaint, must suffer the same fate.

Motions to Dismiss RICO Claims

The RICO claims in essence charge that the Bolton defendants engaged in fraud in the sale of securities amounting to a pattern of racketeering activity in order to acquire an interest in RUTI, an enterprise engaged in interstate commerce, and that plaintiffs suffered injury as a result. The Bolton defendants argue that these claims must be dismissed because they fail adequately to allege that there was a pattern of racketeering activity, because they fail properly to allege a conspiracy to violate RICO, and as against Richard Bolton individually.[1]

Pattern of Racketeering Activity

Plaintiffs must prove they were injured by reason of defendants' conduct of an enterprise through a pattern of racketeering activity. 18 U.S.C. 1964(c). This requires that at least two acts of racketeering activity have been committed within ten years of each other. 18 U.S.C. 1961(5).

---

1. Although not specifically alleged in the complaint, plaintiffs made clear at oral argument the injury alleged to have been suffered as a result of the claimed RICO violation. That is that the manipulation led to the crash in the price of RUTI securities, and the crash disabled plaintiffs from mitigating the damages suffered after Forbes Walsh Kelly allegedly breached its contract to purchase the stock at a set price.

The pattern requirement has received great attention since the Supreme Court stated in *Sedima S.P.R.L. v. Imrex Co.*, (1985) — U.S. ——, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346, that it " 'requires at least two acts of racketeering activity,' Section 1961(5), not that it 'means' two such acts. The implication is that while two acts are necessary, they may not be sufficient." It is the "factor of continuity plus relationship which combine to produce a pattern." Ibid.

In a cogent and forceful opinion, Judge Sand of this Court recently found that the pattern requirement was not satisfied by allegations of two or more related acts implemented to carry out one isolated, unlawful transaction. *Soper v. Simmons, et al.*, 632 F.Supp. 244 (S.D.N.Y.1986). Citing *Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.*, (N.D.Ill.1985) 615 F.Supp. 828, he found that what is in addition required is that plaintiffs establish continuity between the acts or a threat of continuing wrongful activity. *Id.* 632 F.Supp. at 254. This requirement for continuity was not satisfied by allegations of a "single fraudulent effort, implemented by several fraudulent acts," *id.* at 251, *quoting Inryco, supra* at 831, and he accordingly dismissed claims which alleged various ministerial acts undertaken to deprive plaintiffs of a commission, just as the court in *Inryco, supra*, had dismissed claims which alleged that two mailings had occurred in furtherance of defendant's construction kickback scheme.

 We believe this view to be correct. However, we do not think it here operates to mandate dismissal of the RICO claims. In the cases considered by Judge Sand and the *Inryco* court, only one scheme aimed at a single category of persons was pled. None but those persons were foreseeably injured. Here, on the other hand, although the particular transaction sued upon was aimed only at the plaintiffs, that transaction was a part of a continuing series of transactions, each of which was aimed at different individuals and the totality of which was aimed at the investing public at large. It seems to us that this would fulfill any definition of a pattern, involving as it did both multiple transactions and multiple victims, so that we need not analyze the subtleties suggested by the other cases cited by Judge Sand in *Soper.*

### Conspiracy and Richard Bolton

Paragraph 52 of the complaint charges Richard Bolton, Bolton & Co., and Bear Stearns with conspiring to acquire an interest in RUTI, an enterprise engaged in interstate commerce, through a pattern of racketeering activity. While this paragraph standing alone might not suffice to allege such conspiracy, in light of the more specific allegations of paragraphs 9 through 31 of the complaint, we believe it to be sufficient to allege conspiracy.

As to Richard Bolton individually, the complaint identifies him and his company as being equals in devising and carrying out the alleged fraudulent scheme. We believe it sets forth his role with sufficient specificity to sustain the RICO charges against him.

### Motion to Dismiss Under the Doctrine of In Pari Delicto

 The Bolton defendants argue that plaintiffs knew that they were engaging in a fraudulent scheme and that they are barred from suit by the doctrine of in pari delicto. This common law defense bars recovery by one who is as guilty of wrongdoing as the party he accuses. *Mallis v. Bankers Trust*, (2d Cir.1980) 615 F.2d 68, 76, *cert. denied*, (1981) 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109.

In *Bateman Eichler, Hill Richards, Inc. v. Berner, et al.*, (1985) 472 U.S. 299, 105 S.Ct. 2622, 2629, 86 L.Ed.2d 215, the Supreme Court identified several factors relevant to application of the defense on securities cases. It stated that

A private action for damages may be barred on the grounds of the plaintiffs' own culpability only where (1) as a direct result of his own actions, the plaintiff bears at least substantial responsibility

for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public.

■ We find neither of these factors present here. Whatever the facts may ultimately show, the complaint clearly states that plaintiffs did not at the time they agreed to purchase RUTI securities know that the Bolton defendants were going to be the ultimate purchasers. They cannot be said to have been responsible for the pattern of manipulations of which their purchase was but a part. Thus, at least under the allegations of the complaint, they were not as culpable as the Bolton defendants. In addition, we cannot say that dismissal of this suit would not interfere with enforcement of the securities laws and protection of the investing public. Plaintiffs have alleged significant wrongdoing which might well go unaddressed if they are not permitted, at least at this stage, to proceed. We accordingly deny the motion.

Motions to Dismiss Cross-claims of Forbes Walsh Kelly By Bear Stearns

Forbes Walsh Kelly's second cross-claim alleges that "Forbes, Walsh contracted to sell 28,000 units of RUTI to Bear Stearns for the account of R.E. Bolton & Co., Inc. at 18¼" (Answer to Amended Complaint par. 45) and charges Bear Stearns with breach of contract. As we noted in our first opinion,

> Forbes, Walsh … has stated no facts which indicate that Bear, Stearns acted other than as an agent for a disclosed principal. In this position, of course, Bear, Stearns may not be liable for the acts of its master.

Memorandum and Order dated April 20, 1984 at page 3. Forbes Walsh has not raised any allegations or arguments not raised before which should change this result, and we accordingly dismiss its contract claim.

By the Bolton Defendants

Forbes Walsh seeks indemnity from the Bolton defendants should plaintiffs recover from it for breach of contract; damages for breach of contract; and damages for breach of a separate agreement to sell 1,100 units of RUTI to Bolton & Co. The Bolton defendants withdrew at oral argument their motion to dismiss the breach of contract claim premised on the 26,900 units at issue in the complaint.

As to Forbes Walsh's demand for indemnity, we cannot say at this stage that the Bolton defendants are correct that Forbes Walsh acted wilfully and is not entitled to such relief. We therefore decline to dismiss this cross-claim.

■ We agree with the Bolton defendants that Forbes Walsh's third cross-claim should be dismissed. Federal Rules of Civil Procedure 13(g) provides that causes of action arising out of the transactions or occurrences which are the subject matter of the complaint or a counterclaim, or of property which is the subject of the suit, may be asserted as cross-claims. Forbes, Walsh's third cross-claim alleges that the Bolton defendants breached an agreement to purchase from it 1,100 units of RUTI which are not the subject of the complaint, and as to which Forbes Walsh suggests no connection with the alleged events or scheme pled in the complaint. As the cross-claim does not meet the criteria of Rule 13(g), we order that it be dismissed.

Forbes, Walsh's Motion to Dismiss the Complaint

The only claim plaintiffs assert against Forbes Walsh is for breach of contract. Forbes Walsh moves to dismiss on the ground that the contract was illegal and unenforceable and that plaintiffs knew it when they entered into it.

■ We do not agree that the original and amended complaints show that plaintiffs knew the contract was illegal when they entered into it; on the contrary, the amended complaint states that Donald Ross did not know until after Forbes Walsh

had repudiated that R.E. Bolton & Co. was the intended purchaser. Factual development may prove this wrong, but for present purposes plaintiffs have alleged only that Forbes Walsh had contracted to purchase the RUTI securities from them and that Forbes Walsh breached that agreement. Under this reading of the complaint, the cases cited by Forbes Walsh are inapplicable and we deny its motion.

To summarize, we order that the complaint and cross-claims against Bear Stearns be dismissed in their entirety. As to the Bolton defendants, we direct that Forbes Walsh's third cross-claim be dismissed. All other motions are denied.

SO ORDERED.