Nancy **CAMPBELL; Lynne Gallus and John Gallus; Sheryl Gay Vetter; Linda L. Mickelson and David E. Mickelson,** Plaintiffs,

v.

**A.H. ROBINS COMPANY, INC., a Virginia corporation not registered to do business in the State of Wisconsin; Aetna Casualty & Surety Co., a Connecticut corporation registered to do business in Wisconsin; E. Claiborne Robins, Sr.; Hugh J. Davis; and E. Claiborne Robins, Jr., Defendants.**

Nos. 85–C–230–S to 85–C–233–S.

United States District Court,
W.D. Wisconsin.

Aug. 16, 1985.

Gilda B. Shellow, Milwaukee, Wis., John A. Cochrane, St. Paul, Minn., for plaintiffs.

Edmund W. Powell, Stuart Parsons, Milwaukee, Wis., for defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

The plaintiffs in these consolidated actions have added two wrinkles to the ordinary product liability case which are novel, at least in this Court. The wrinkles are being tested by a motion from defendant Aetna Casualty & Surety Co. to dismiss.

### FACTS

The allegations of the complaint,[1] which are taken as true for purposes of the pending motion, are, up to a point, all too familiar. The plaintiffs[2] claim that each of them had an intrauterine device (IUD) inserted for purposes of contraception. The device was known as the Dalkon Shield, and was manufactured by defendant A.H. Robins Company, Inc. (Robins). The device allegedly caused a number of illnesses and injuries. These facts provide the bases for several counts of the complaint against Robins and three of its principals. Counts I through VI are brought, respectively, under theories of: negligence, strict liability, implied warranty, express warranty, misrepresentation, and fraud. These are state common law claims and jurisdiction is asserted under 28 U.S.C. § 1332.

This motion, however, addresses two other aspects of the complaint. First, Count VII of the complaint proceeds under the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961 et seq. Second, Robins' insurer, Aetna Casualty & Surety Co., (Aetna) is named as a principal

---

1. All four complaints contain virtually identical allegations with respect to the issues raised by this motion. Any specific paragraph designations or quotations will be taken from 85–C–230–S, and "the complaint" refers to all of the complaints.

2. Although the four female plaintiffs are joined by the spouses of two of them, the Court is, at this time, concerned only with the claims of the female plaintiffs, so references to "plaintiffs" should be treated accordingly. The complaints which name a spouse include an eighth count for loss of consortium.

defendant.[3] With respect to these issues, the complaint alleges that all of the defendants, including Aetna, were an association in fact operated to profit from the Dalkon Shield; to conceal from the public the ineffectiveness and dangers of the Dalkon Shield; and to obstruct efforts of those injured by the Dalkon Shield to litigate claims. The specific allegations are as follows:

30. Each of the defendants was associated with the enterprise [of the association in fact] and participated in the affairs of the enterprise through a pattern of racketeering activity consisting of acts of mail fraud in violation of 19 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, and obstruction of justice in violation of 18 U.S.C. § 1503.

31. Beginning in or about November 1970 and continuing through the fall of 1984, defendants A.H. Robins Company, Inc., Aetna Casualty & Surety Co., E. Claiborne Robins, Jr., Hugh J. Davis, and E. Claiborne Robins, Jr. (sic) devised and intended to devise a scheme and artifice to defraud the public and the medical profession into accepting the Dalkon Shield as an effective and safe intrauterine contraceptive device knowing and having reason to know that the device was not as effective nor safe a contraceptive device as defendants represented.

In paragraph 32, the complaint sets forth ten specific acts of agents of Robins concerning mail and wire communications regarding the safety and effectiveness of the Dalkon Shield which are allegedly false and which were known to be false by the company. The complaint then continues:

33. Each of the defendants ... aided and abetted by each other and by their agents, employees and attorneys, participated in the conduct of the enterprises affairs by commiting the following racketeering acts, among others, in violation of 18 U.S.C. § 1503:

a. Intentionally destroying documentary evidence which would have assisted plaintiffs in pending and future federal litigation in proving the unsale and ineffective nature of the Dalkon Shield as a contraceptive device;

b. Intentionally concealing from plaintiffs in pending federal litigation the destruction of the aforesaid documentary evidence and the existence of additional documentary evidence which would have assisted plaintiffs in establishing their claims;

c. Knowingly making unfounded assertions of privilege relating to documents which were ordered to be produced in pending federal litigation;

d. Knowingly propounding to plaintiffs in pending federal litigation questions seeking irrelevant answers in an effort to embarrass, harass and intimidate plaintiffs in order to cause plaintiffs to abandon or compromise just claims.

All of the above conduct is allegedly in violation of 18 U.S.C. § 1962(c). Further, each of the defendants is alleged, paragraph 35, to have received income from this conduct and invested it in the operation of the enterprise. Finally:

36. Each of the defendants conspired with each other and with persons unknown to violate the provisions of 18 U.S.C. § 1962(c) as described in Paragraphs 31–33, *supra,* and the provisions of 18 U.S.C. § 1962(a) as described in Paragraph 35, *supra,* all in violation of 19 U.S.C. § 1962(d).

Attached to the complaint, and incorporated by paragraph 9 of the complaint, is an appendix alleging further facts. The allegations in the appendix detail the development, manufacture, regulatory history and the knowledge of Robins concerning medical problems associated with the Dalkon Shield. In addition, the allegations of the appendix detail the litigation history of the Dalkon Shield with some specificity. The appendix includes the following statements:

---

**3.** The Court assumes without deciding that Aetna is also named in its capacity as insurer under

Wisconsin's direct action statute, Wis.Stat. § 803.04(2).

(A25) From 1975–1983, litigation ensued as a result of the Shield. The strategy of the company was to settle as many claims as possible for nuisance value so as to not alert the public. Only a token number (under 50 cases) of the thousands of cases were permitted to go to trial.

(A26) Because of the difficulty of plaintiffs' discovery from Robins, an Eighth Circuit Multidistrict Litigation Panel ... was appointed to oversee discovery in this litigation. During this period, Robins represented that all relevant discovery was turned over to plaintiffs.

Several paragraphs of details concerning the withholding and destruction of relevant documentary evidence by Robins employees are alleged. Then it continues:

(A30) With respect to all claims arising from use of the Dalkon Shield, Robins was insured by defendant Aetna. Aetna selected and retained attorneys to represent Robins, and it exchanged with Robins, by mail and other means, information relating to the manner by which such claims were processed, including the disclosure and withholding of pertinent discoverable materials. Aetna and the attorneys it retained, acting in concert with Robins employees and attorney, knowingly withheld and concealed relevant and material evidence which had been ordered to be produced and disclosed by various courts presiding over Dalkon litigation. Further, Aetna and the attorneys it retained knowingly denied the existence of relevant and material evidence which had been concealed or destroyed by Robins and its employees for the purpose of obstructing justice and weakening the claims of Dalkon Shield users.

(A31) Attorneys retained by Aetna, with the knowledge and consent of Aetna and Robins, conducted Dalkon Shield-related litigation in a fashion deliberately designed to discourage women from commencing and continuing the litigation by *e.g.*, asking irrelevant, embarrassing and harassing questions during depositions and interposing unfounded objections designed to impede the deposition process.

Also included in the appendix are allegations that Aetna and Robins "fraudulently and without valid reason denied claims in order to force claimants to compromise their claims at less than full value," and that they also entered into an agreement in 1977 which is evidence of "Aetna's continuing participation in the combination, conspiracy and ongoing aiding and abetting of the acts complained of." This agreement is set forth in full and, on its face, purports to settle policy coverage disputes between Aetna and Robins. Aetna promises to continue to represent Robins in Dalkon Shield cases which come under the coverage of the previously entered policies for compensatory damage claims. Robins agrees to defend itself with respect to punitive damage claims, agreeing also that attorneys hired for this purpose will cooperate with, and be under the control of, attorneys selected by Aetna. The parties also release each other from damage claims "relating directly or indirectly to or connected with the Dalkon Shield cases" which either party had as of the date of the agreement, but not after. Aetna also promises to continue to insure Robins, contingent upon obtaining adequate reinsurance. Robins relinquishes any right to recovery from Aetna of punitive damages awarded to claimants. And, perhaps most important to Robins, Aetna waives any right to deny coverage, or to rescind or revoke policies, for Dalkon Shield cases on account of Robins' failure to "disclose important relevant information and the supplying of false or misleading information relative to said cases...." The agreement is signed and dated by both parties.

### MEMORANDUM

■ The plaintiffs advance the following legal theory for their novel claims against Aetna:

At a time in approximately February 1974, Aetna joined a pre-existing, ongoing conspiracy which included the remaining named defendants as its mem-

bers. By joining this conspiracy, Aetna assumed liability for the acts of its co-conspirators; such liability is retroactive, as well as prospective. Therefore, Aetna assumed liability for the acts of its co-conspirators, and co-defendants. This assumption of liability for the acts of its co-defendants forms the basis for Aetna's liability under the legal theories adduced in Counts I–VI.

Plaintiffs' brief, page 2–3 (citations omitted).

It is not fatal to plaintiffs' claims against Aetna that there appear to be no published decisions facing these issues.[4] Nor does the Court believe it to be necessary to decide this motion on the basis of the pleading requirements contained in Rules 8 and 9, Federal Rules of Civil Procedure, although there is merit to Aetna's contentions in this respect. Had the plaintiffs not advanced the argument above, the Court would not have guessed that there existed an intent to assert that Aetna was directly liable under Counts I through VI.

The real problem with the plaintiffs' theory, as it concerns the first four counts, is that it is incomprehensible. Precisely how the defendants, or anyone else, can conspire to cause negligent harm or conspire to cause damages under a strict product liability claim is inexplicable. The same must be said for the warranty claims. None of these claims are amenable to a conspiracy theory. There must be some manifestation of intent to conspire toward an unlawful end (or an unlawful means to a lawful end). *Abdella v. Catlin,* 79 Wis.2d 270, 255 N.W.2d 516 (1977) and *City of Kiel v. Frank Shoe Mfg. Co.,* 245 Wis. 292, 14 N.W.2d 164 (1944).

Furthermore, all six of the state based claims are faulty for the simple reason that an insurer owes no duty of care to injured third parties under Wisconsin law. In the same vein there must be allegations of how a defendant may have breached such

duties, and how the plaintiffs' injuries may have been caused by the defendant. *Collins v. Eli Lilly & Co.,* 116 Wis.2d 166, 342 N.W.2d 37 (1984), cert. den. —— U.S. ——, 105 S.Ct. 107, 83 L.Ed.2d 51.

■ Finally, it is clear that plaintiffs' conspiracy theory must be unavailing for still another reason. It is, of course, true that conspirators are responsible for the overt acts of co-conspirators, even those that occurred before they entered the conspiracy. But, as Aetna points out, retrospective liability of co-conspirators does not not operate to make the late-entering conspirator responsible for the already completed substantive offenses of his cohorts. This is true in the criminal sphere, cases from which provide the plaintiffs' only support. *U.S. v. Covelli,* 738 F.2d 847, 859 (7th Cir.1984), cert. den. —— U.S. ——, 105 S.Ct. 211, 83 L.Ed.2d 141 (citing *U.S. v. Knippenberg,* 502 F.2d 1056, 1059 (7th Cir. 1974)). And, given the comments of the Wisconsin Supreme Court in *Collins v. Eli Lilly Co.,* 116 Wis.2d 166, 342 N.W.2d 37, 47–48 (1984), cert. den. —— U.S. ——, 105 S.Ct. 107, 83 L.Ed.2d 51, retrospective civil liability is certainly a questionable proposition at best. The Court must agree with Aetna that *Collins* implicitly repudiates the theory advanced by the plaintiffs here.

It is clear, therefore, that plaintiffs have stated no substantive claim for which relief can be granted against Aetna. Aetna will be dismissed from Counts I through VI.

■ The RICO claim must suffer the same fate. Aetna charges that the complaint is deficient in two respects: the complaint does not allege a causal connection between the racketeering offenses attributable to Aetna and the injuries that plaintiffs suffered; and the complaint does not, and cannot, allege an injury to "business or property" as required by 18 U.S.C. § 1964(c).[5]

---

4. In an as yet unpublished decision, Judge Myron Gordon granted an identical motion directed at complaints which appear to be similar to these. *Bast v. Robins,* 616 F.Supp. 333 (E.D.Wis. 1985).

5. The Court also sees some merit in the defendant's objection based on the lack of particularity in the complaint under Rule 9(b), Federal Rules of Civil Procedure. However, the Court finds it unnecessary to hold that time, date and place allegations are necessary to comply with the rule.

The latest word on civil RICO is contained in *Sedima S.P.R.L. v. Imrex Co., Inc.,* —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Although not directly on point with the issues presented by Aetna's motion, the holding of the Supreme Court provides some guidance. The Court explicitly concurred in the view of the Seventh Circuit (*see Haroco v. Amer. Nat'l Bank,* 747 F.2d 384 (7th Cir.1984) that there need be no showing of a "racketeering injury" nor need there be injury in addition to that caused by the predicate acts. However, the dissent of Justice Marshall points out that personal injuries (which, despite plaintiffs' protests to the contrary, are the only injuries alleged) are not compensable at all under RICO:

> They [plaintiffs] could not, for example, recover for the cost of the building burned, or for personal injury resulting from the threat. Indeed, compensation for this latter injury is barred already by RICO's exclusion of personal injury claims.

*Sedima,* 105 S.Ct. at 3303 (Marshall, J., dissenting). Although no authority is cited for this statement, it was evident to Justice Marshall, and it is evident to this Court, that personal injuries are clearly not injuries to either business or property within the context of this statute. The very case that plaintiffs use to support their argument actually undercuts it. In *Reiter v. Sonotone,* 442 U.S. 330, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979), the Court construed identical language from the anti-trust statutes (on which the RICO statute was patterned) and concluded that personal injuries were excluded. *Id.* at 339, 99 S.Ct. at 2331.

Accordingly, the RICO count must also be dismissed. The Court need not decide whether the complaint alleges a connection between plaintiffs' injuries and Aetna's wrongdoing. It is enough to recognize that the connection is attenuated at best. Aetna's wrongful acts were allegedly ob-struction of justice by virtue of the conduct of prior Dalkon Shield litigation. Plaintiffs' personal injuries are obviously not caused by these activities, so Aetna's liability must be predicated on its actions being part of an ongoing conspiracy. This connection is deficient with respect to both specificity and logic.

### ORDER

IT IS ORDERED that the motion of defendant Aetna Casualty & Surety Co. to dismiss all claims against it is GRANTED.