**Rocco SAVASTANO, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**THOMPSON MEDICAL CO., INC., Defendant.**

**No. 86 Civ. 2451 (LBS).**

United States District Court, S.D. New York.

Aug. 1, 1986.

Brian A. Sheridan, White Plains, N.Y., for plaintiff.

Curtis, Mallet-Prevost, Colt & Mosle, New York City (Elliot Lauer, Daniel R. Lenihan, Jacques Semmelman, Pamela Phillips, of counsel), for defendant.

SAND, District Judge.

Plaintiff Rocco Savastano originally commenced this action on March 24, 1986, by filing a complaint against defendant Thompson Medical Company, Inc. ("Thompson"), a pharmaceutical manufacturer, alleging that the latter had violated the Rackeetering Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961–1968 ("RICO") and the New York General Business Law, § 349 et seq. (McKinney Supp. 1986). Plaintiff sought to maintain the suit as a class action, pursuant to F.R.Civ.P. 23(b)(3), on behalf of himself and all others who had purchased one of defendant's products, Dexatrim–15, between February, 1984, and November 1, 1985.

On May 22, 1986, Thompson moved for an order, pursuant to F.R.Civ.P. 12(b)(1), 12(b)(6) and 9(b), dismissing plaintiff's complaint. At oral argument, plaintiff's counsel represented to the Court that plaintiff was currently in a position to amend his complaint and to plead fraud with greater particularity. Tr. 4. Rather than "deal with academic issues that w[ould] be mooted by an amended complaint," (Tr. 5), defendant's motion was withdrawn without prejudice to refiling after plaintiff filed his amended complaint.

Plaintiff filed an amended complaint on May 27, 1986, alleging the same violations pled in his earlier complaint, and on July 10, 1986, defendant once again moved for an order, pursuant to F.R.Civ.P. 12(b)(1), 12(b)(6), and 9(b), dismissing plaintiff's amended complaint. For the foregoing reasons, defendant's motion is granted.

### FACTS

Thompson, a foreign corporation duly qualified to conduct business in the State of New York, markets and sells nonprescription, over-the-counter appetite suppressants. Thompson apparently has 55% of the market in such products and has achieved this rate of success predominantly through the product principally involved in this litigation—Dexatrim.

Dexatrim also has been the subject of prior litigation. One of defendant's competitors, Ciba Geigy Corp. ("Ciba"), brought suit against Thompson in 1983 (*Ciba Geigy Corp. v. Thompson Medical Co., Inc.*, No. 83 Civ. 8924 (VLB)) alleging that the latter had violated the Lanham Act (15 U.S.C. § 1125(a)) by falsely representing that its new product, "Extra Strength Dexatrim 18–Hour" ("Dex 18"), was effective for eighteen hours. On January 30, 1984, Judge Broderick indicated after trial that he would enjoin the marketing of Dex 18 because Thompson could not claim it lasted 18 hours. This was due to the fact

that the blood level of Phenolpropanolamine HC1 ("PPA"), a synthetic drug compound that is Dexatrim's active ingredient, dropped below 60 nanograms per M1/blood level before the eighteen hour mark. *See Thompson Medical Co. v. Ciba-Geigy, Inc.*, No. 85 Civ. 4928, (S.D.N.Y. April 16, 1986) (available on Lexis, Genfed Library, Dist. file) [Available on WESTLAW, DCTU database].[1]

Before the exact contours of the injunction were decided, the parties agreed to a settlement. *Id.; see also Thompson Medical Co. v. Ciba-Geigy, Inc.*, No. 85 Civ. 4928 (S.D.N.Y. Nov. 21, 1985) [Available on WESTLAW, DCTU database] (available on Lexis, Genfed Library, Dist. File). The parties' agreement, dated February 7, 1984, apparently barred shipment of Dex 18 and had it recalled by mailgram from retailers' shelves; it "also provided that the concoction then labeled Dex 18 could be introduced as a 15–hour duration product," "Dexatrim–15" ("Dex 15"). Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss of July 2, 1986 ("Plaintiff's Memo.") at 2–3.

Thompson then instituted an action before Judge Lowe alleging that Ciba's claims in regard to its product, Acutrim, were false. *Thompson Medical Co. v. Ciba-Geigy, Inc., supra*, No. 85 Civ. 4928 (MJL). According to plaintiff, it was during discovery related to this action that Ciba came across two reports related to Dex 18, Harris II and Harris III. Harris II allegedly had been received by Thompson in February, 1984, when it was negotiating the settlement with Ciba; it concluded that Dex 18 was at best effective for approximately 12 hours. Harris III, issued in or about April, 1984, allegedly "confirmed Harris II and more conclusively established

that Dex 15 [formerly marketed as Dex 18] had a duration of no more than 12 hours." Plaintiff's Memo. at 3. Subsequent to obtaining this information, Ciba filed a new complaint seeking, *inter alia*, to permanently enjoin Thompson from claiming in labeling, advertising or promotional materials that Dex 15 provided effective appetite suppression for 15 hours or contained 75 milligrams of PBA. *Ciba-Geigy Corp. v. Thompson Medical Co.*, No. 85 Civ. 7070 (VLB) ("Ciba II"). Thompson asserted three counter-claims alleging, in substance, that Ciba had made certain misrepresentations to television networks regarding Judge Broderick's earlier decision that prompted these networks to "improperly agree[ ] to televise Ciba's ... advertisements." Thompson also alleged that Ciba had made claims of its product's superior duration that were based upon false premises and that Ciba had never conducted any comparative weight loss studies to substantiate its superior weight loss claims. *Id.*

Judge Broderick rendered a decision in *Ciba II* on January 2, 1986 enjoining Thompson from marketing Dex 15 until it had conducted tests that could appropriately support a 15 hour duration claim. As to Thompson's counterclaims, Judge Broderick found that Ciba's statements to the networks were not false or misleading but that its advertisements *did* make therapeutic superiority claims without the necessary clinical support. Ciba was thus enjoined from marketing its Acutrim II as a 17 hour product until it had conducted the appropriate tests to justify such a claim. *Ciba-Geigy, Corp. v. Thompson Medical Co.*, 85 Civ. 7070 (S.D.N.Y. Dec. 19, 1985).

Judge Lowe subsequently rendered a decision in *Thompson Medical Co. v. Ciba-*

---

1. As Judge Broderick later clarified, his "'60 nanogram per milliliter holding ... was applied to prohibit claims from being made that a product was effective when the blood level readings fell below 60 nanograms per milliliter. It did not, however, authorize the converse. It did not authorize a claim that a product was not effective if the blood levels fell below 60 nanograms per milliliter absent clinical proof to support such a claim.'" *Thompson Medical Co. v. Ciba-Geigy Corp.*, No. 85 Civ. 4928 (MJL) (S.D.N.Y. April 16, 1986) [Available on WESTLAW, DCTU database] (quoting *Ciba-Geigy Corp. v. Thompson Medical Co.*, No. 85 Civ. 7070 (VLB) (S.D.N.Y. Dec. 19, 1985)). In other words, Thompson was prohibited from advertising that Dex 18 was effective after the blood levels fell below the above-stated standard until scientific proof established a precise minimum therapeutic level. *Id.* (The 60 nanogram level was derived from a calculation involving the administration of three 25 mg. dosages per day of PPA).

*Geigy Corp.,* No. 85 Civ. 4928 (S.D.N.Y. April 16, 1986) [Available on WESTLAW, DCTU database] (available on Lexis, Genfed Library, Dist. file), addressing only those claims that Judge Broderick had not addressed in *Ciba II.* Judge Lowe's decision denied Thompson's claims for relief. However, it enjoined Thompson's use of specific weight loss claims (*i.e.,* that "people who added Dexatrim to their diets lose 50% more weight") until the appropriate clinical evidence to establish such claims had been developed; the court declined to enjoin Thompson's use of the statement "Lose Weight Fast" provided this was accompanied by an appropriate disclaimer. *Id.*

This brings us to the present Dexatrim controversy. According to plaintiff, defendant's conduct relating to Dex 18 and, later Dex 15 (the same product marketed under a different name), constitutes a "pattern of racketeering activity" that caused injury to plaintiff's as well as other putative class members' business or property in violation of RICO. Plaintiff also alleges that defendant's "Dex 15 scheme which is the predicate for this action, and the Dex 18 scheme which preceded the Dex 15 scheme, involved thousands of separate instances of mail and wire fraud." Amended Complaint ¶ 50; *see also id.* at ¶¶ 44–50.

Besides defendant's "concealment" of the Harris II report during the *Ciba I* litigation, plaintiff contends that after Harris II was confirmed by Harris III, defendant willfully concealed both Harris II and Harris III and "continued to represent to the public, like plaintiff, [in television commercials and on the product's packaging] that Dex 15 was effective for 15 hours." Amended Complaint ¶ 28. Even after Ciba allegedly complained to the television networks, defendant responded with an analysis ("Dr. Silverman's analysis") it knew was based mostly upon inadequate studies to substantiate the claims made by its product. *Id.* at ¶¶ 30–33. Three of the studies from which this analysis was derived—Harris I, Harris II, and the Pfeiffer study—allegedly "were improperly conducted and inadequate to establish a duration claim."

*Id.* at ¶¶ 32–33. The only properly conducted study, prepared by the University of California, apparently was conducted on the first lot of Dex 18 subsequent to which the product's manufacturing specifications were altered. *Id.* at ¶ 34.

## DISCUSSION

■ To state a claim for a civil RICO violation, plaintiff must prove that he was injured in his business or property by reason of defendant's conduct of an enterprise through a "pattern of racketeering activity." *Rojas v. First National Bank,* 613 F.Supp. 968, 971 (E.D.N.Y.1985) (citing *Sedima S.P.L.R. v. Imrex Co.,* —— U.S. ——, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985)); *see also* 18 U.S.C. 1964(c). Defendant sets forth three separate grounds as to why plaintiff's RICO claim fails to state a cause of action: (1) the complaint does not allege a "pattern of racketeering activity," as required under 18 U.S.C. § 1962(c); (2) it does not allege predicate RICO offenses, in that the mail and wire fraud allegations do not comply with the particularity requirement of F.R.Civ.P. 9(b); and (3) it does not allege injury to business or property, as required under 18 U.S.C. § 1964(c). Defendant's Memorandum of Law in Support of Motion to Dismiss the Amended Complaint ("Defendant's Memo.") at 2. Defendant's motion, moreover, is governed by the standard articulated in *Conley v. Gibson:* "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). All the facts plaintiff has alleged must be taken as true, and defendant's motion shall be denied if a claim has been pleaded. *See Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985).

### 1. *Pattern of Racketeering Activity*

Defendant contends that "[p]laintiff merely alleges a single ongoing scheme to

falsely market a single 12–hour product as an extended duration product, in furtherance of which Thompson allegedly made two false claims." Defendant's Memo. at 19. According to defendant, the case law has established that "multiple [mail or wire fraud violations] in furtherance of a single ongoing scheme do not constitute a 'pattern'" (*see id.* at 11, 20) and that, at the very least, separate criminal episodes must be proven. Defendant's Reply Memorandum of Law in Support of Motion to Dismiss the Amended Complaint of July 9, 1986. ("Defendant's Reply Memo." at 7).

Plaintiff contends that no pattern of schemes is required and that defendant's "open-ended scheme" satisfies the "pattern" requirement because it "(a) defrauded thousands of persons each day for years, (b) was cut short after twenty months only when the executioner's axe began to descend in an injunctive suit by a competitor, (c) involved thousands of abuses of the mails and wires in furtherance of the scheme, and was orchestrated by the same defendant." Plaintiff's Memo. at 17–18. Defendant characterizes and dismisses plaintiff's argument as one which calls for the satisfaction of the "pattern" requirement by the number of the alleged scheme's victims and the sufficiency of the particular scheme's duration. Defendant's Reply Memo. at 8. Finally, defendant concludes that "[p]laintiff offers no explanation of how Thompson's decision to distribute a single allegedly mislabeled product can possibly constitute more than one independently motivated crime." *Id.* at 12.

This court recently addressed in great detail the post-*Sedima* status of civil RICO's "pattern" requirement. *See Soper v. Simmons International, Ltd.*, 632 F.Supp. 244, 250–55 (S.D.N.Y.1986). In *Soper*, we concluded that more than two related acts were needed to satisfy this

requirement and that "'merely' ministerial acts performed in the execution of a single [allegedly] fraudulent scheme" were not sufficient. *Id.* at 254 (citations omitted). We did not, however, postulate a requirement that plaintiffs plead more than one fraudulent scheme; rather, we expressly noted how one open-ended scheme including "'a sufficient number of independent episodes to satisfy the [threat of continuing criminal activity] factor of *Sedima*'" could satisfy the "pattern" requirement. *Id.* at 253 (quoting *Graham v. Slaughter*, 624 F.Supp. 222, 225 (N.D.Ill.1985).[2]

■ Although this is a closer case than *Soper*, we do not find that plaintiff has met this requirement. Logically, we must view defendant's alleged criminal activity as an attempt to intentionally misrepresent through packaging and advertisements the performance of a single product. As such, it could at best be characterized as "a single fraudulent effort, implemented by several fraudulent acts," (*Northern Trust Bank/O'Hare, N.A. v. Inryco Co., Inc.*, 615 F.Supp. 828, 831 (N.D.Ill.1985)) and is insufficient to meet RICO's "pattern" requirement.

Cases cited by plaintiff do not convince us otherwise. In *United States v. Yonan*, for example, the fact that the same person received payments to fix a whole series of criminal cases in the Cook County Circuit Court did not deter Judge Shadur from finding that the "pattern" requirement had been met. 622 F.Supp. 721, 728 (N.D.Ill. 1985). The key factor, however, is that ten *separate* cases were fixed by these separate acts of bribery. *Id.* The conduct at issue thus amounted to "repeated criminal activity, not merely repeated criminal acts to carry out the same criminal activity." *Inryco*, 615 F.Supp. at 831 (emphasis in original). In other words, it posed a "threat of continuing criminal activity"

2. *Compare with Temporaries, Inc. v. Maryland National Bank*, 638 F.Supp 118 (D.Md.1986), which states that "[w]ithout an open-ended series of activities which comprise a convincing scheme, more than one scheme should be required to establish a 'pattern' of racketeering activity." *See also Papai v. Cremosnik*, 635 F.Supp. 1402 (N.D.Ill.1986) (noting that "[t]he line between 'scheme' and 'episode' is not always a bright one," the court still concluded that requiring plaintiffs to plead and prove multiple criminal schemes was not in keeping with RICO's purposes).

*Fleet Management Systems, Inc. d/b/a Logistic Systems v. Archer-Daniels-Midland Co.*, 627 F.Supp. 550, 559 (C.D.Ill.1986). No such threat is present in Thompson's allegedly criminal behavior; in fact, the withdrawal of Dexatrim from the marketplace would "spell the limit of [Thompson's allegedly] fraudulent scheme." *Kredietbank N.V. v. Joyce Morris, Inc.*, No. 84–1903, slip op. at 15 (D.N.J. Oct. 11, 1985) (available on Lexis, Genfed Library, Dist. file), motion for reconsideration denied, No. 84–1903 (D.N.J. Jan. 9, 1986 (available on Lexis, Genfed Library, Dist. file). [Available on WESTLAW, DCTU database.]

In *Graham v. Slaughter*, 624 F.Supp. 222 (N.D.Ill.1985), "a two-year practice of embezzling funds from a company through otherwise separate transactions [was found to] constitute [ ] a 'pattern of racketeering activity.'" *Id.* at 225. The *Graham* court noted that "[u]nlike the case in *Inryco*, the predicate acts alleged here are not ministerial acts performed in the execution of a single fraudulent transaction, but *appear to be independently motivated crimes.*" *Id.* (emphasis added); *see also Soper, supra*, 632 F.Supp. at 254; *Heritage Ins. Co. v. First National Bank of Cicero*, 629 F.Supp. 1412, 1416–17 (N.D.Ill.1986); the predicate acts alleged by Thompson cannot be so characterized.

Finally, in *Papagiannis v. Pontikis*, 108 F.R.D. 177 (N.D.Ill.1985), the district court sua sponte directed plaintiff's counsel to elect which claims to dismiss because the complaint represented an impermissible joinder of separate claims. *Id.* at 178. Apparently, the plaintiffs at different times had entered into separate purchase contracts for a working interest in two different oil wells. *Id.* Each alleged that the defendants had made approximately the same misrepresentations; however, because the term "same ... series of transactions or occurences" could not be "fairly appl[ied]" to two victims' wholly separate

encounters with a confidence man simply because he follows the same routine in cheating each of them," Rule 20(a) joinder was deemed inappropriate. *Id.* at 178–79.

The *Papagiannis* court distinguished the Rule 20(a) joinder requirements from RICO's "pattern" requirement, the latter of which the complaint apparently met. *Id.* at 179.[3] Citing *Yonan* and *Inryco, supra*, Judge Shadur stated "it is clear that a malefactor's perpetration of fraudulent activities on more than one victim, while following the same modus operandi, is indeed a 'pattern' for RICO purposes." *Id.* Although plaintiff seizes upon this language and other case law as support for its assertion that the existence here of more than one victim distinguishes this from other cases where no "pattern" was found (see Plaintiff's Memo. at 13–14; 18), the number of victims, like duration, is but one of a variety of factors indicative of "continuity," an important aspect of the "pattern" requirement. *See Richter v. Sudman*, 634 F.Supp. 234, 238 (S.D.N.Y.1986) (fact that single activity continues over particular length of time does not necessarily establish a pattern); *Temporaries, Inc. v. Maryland National Bank, supra* note 2, 638 F.Supp at 122, n. 1. ("Courts may consider a variety of factors which are indicative of continuity such as ... the number of victims of such acts ..."). Certainly, defendants' alleged actions in *Papagiannis* go beyond the defendant Thompson's "ministerial acts," which were performed to perpetuate misconceptions regarding a single product.

Other courts have criticized the practice of "carv[ing] one criminal episode into multiple predicate act 'pieces' and alleg[ing] a 'pattern' within the meaning of the [RICO] statute." *Rush v. Oppenheimer & Co., Inc.*, 628 F.Supp. 1188, 1199 (S.D.N.Y. 1985); *see also Richter v. Sudman, supra*, 634 F.Supp. at 240. This is precisely what

---

**3.** It is not entirely clear whether the court found that the "pattern" requirement had been met although such a conclusion is warranted. Early on, it states that the sameness of defendant's alleged misrepresentations *might* reflect a pattern of conduct (108 F.R.D. at 178). Later, in its discussion of this requirement, it notes that "its silence as to the other RICO elements involves no implication either way as to whether or not they have been met." *Id.* at 179 n. 2.

plaintiff has done here—as "the specific actions underlying each alleged fraud ... served [the] common end" (*Richter*, 634 F.Supp. at 240) of getting consumers to purchase *one* particular product. Moreover, to allow the fact that this product was allegedly first misrepresented as being effective for 18 hours and then for 15 hours to convert this "one-dimensional scheme into a RICO 'pattern' " (*Dunham v. Independence Bank of Chicago*, 629 F.Supp. 983, 990 (N.D.Ill.1986)) would, in our opinion, further undermine the statute's intent. *See Anisfeld v. Cantor Fitzgerald & Co.*, 631 F.Supp. 1461, 1467 (S.D.N.Y.1986) ("The fact that there may have been numerous misrepresentations in connection with this single transaction would not create a pattern under the interpretation of the RICO statute").[4]

Speaking in the context of RICO's "injury to business or property" requirement, the district court in *Van Schaick v. Church of Scientology*, 535 F.Supp. 1125, 1128 (D.Mass.1982), made an observation we find applicable here. That observation is that "Congress [did not] intend [ ] § 1964(c) to afford a remedy to every consumer who could trace purchase of a product to a violation of § 1962." *Id.* at 1137 (citations omitted). Not only is the legislative history devoid of any such interpretation, but, if it were present, it "would open the federal courts to frequent RICO treble damage claims by federalizing much consumer protection law and by inviting plaintiffs to append RICO claims for consumer fraud to nonfederal claims[,] thereby

achieving treble damage recovery and a federal forum." *Id.* (citation omitted); *see also Morrison v. Syntex Laboratories, Inc.*, 101 F.R.D. 743, 744–45 (D.D.C.1984) (if RICO applied in case alleging fraudulent advertising of infant formula, "it would most likely apply in every products liability case involving alleged false representations, and use of the mails or the channels of interstate commerce"); *K-N Energy, Inc. v. Gulf Interstate Co.*, 607 F.Supp. 756, 770 (1983) ("RICO should not be applied in such a way to encompass every possible fraudulent activity" (citations omitted) ).

This conclusion should survive *Sedima*[5] and, in essence, is more appropriate now that the Supreme Court has spoken more definitively on the need "to develop a meaningful concept of 'pattern.' " *Sedima*, 105 S.Ct. at 3287.[6] After all, "[t]he basic policy objective behind all of the RICO opinions is to create a net wide enough to catch organized crime yet narrow enough to avoid federalizing 'garden variety' frauds." *Papai v. Cremosnik*, *supra* note 3. To exclude from RICO's grasp the present claim (as well as other claims against manufacturers of products alleged to have been fraudulently advertised) satisfies this policy objective.

### 2. Pendent State Law Claim

The Court's subject matter jurisdiction of this action is predicated upon the existence of a federal question, namely, plaintiff's RICO claim. *See* 18 U.S.C. § 1968; *see also* Amended Complaint ¶ 1.

---

**4.** Although it has been noted that the "frequent repetition of the *identical misrepresentation* to implement a single plot ... resembles the mailing of more than one letter to further a kickback scheme [found not to constitute a pattern in *Inryco, supra* ]," *Dunham, supra*, 629 F.Supp. at 990 (emphasis added), courts also have found the pattern requirement to be satisfied even when a "like set of malicious representations [were made] to several different parties." *SJ Advanced Technology & Mfg. Co. v. Junkunc*, 627 F.Supp. 572, 577 (N.D.Ill.1986). Thus, with respect to the pattern issue, the fact that defendant made two different representations as to the durational effectiveness of Dexatrim is not dispositive.

**5.** With respect to the "injury to business or property requirement," the conclusion reached in *Van Schaick, i.e.*, that personal injuries are not within RICO's purview, *has* survived *Sedima*. *See, e.g., Drake v. B.F. Goodrich Co.*, 782 F.2d 638, 644 (6th Cir.1986); *Campbell v. A.H. Robins Co.*, 615 F.Supp. 496, 501 (W.D.Wisc. 1985).

**6.** *But cf. Mayer v. Angelica*, 790 F.2d 1315 (7th Cir.1986) (judgment on verdict against defendant for *inter alia*, violation of RICO premised upon induced purchase of a number of gemstones via intentional misrepresentations as to quality, value, etc. during six transactions, was reversed on other grounds).

With respect to plaintiff's state law claim, *see* text *supra*, there is no independent basis for federal jurisdiction. This is because the only basis available, 28 U.S.C. § 1332 diversity jurisdiction, has a $10,000 amount in controversy requirement that must be met by *all* class members in a Rule 23(b)(3) action. Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 3705 at 107 (1985). Since plaintiff's claim for damages as to this count is "treble the amount paid for Dexatrim 15, or liquidated damages of $50.00 each, whichever is greater," (Amended Complaint ¶ 58(d)), the amount in controversy requirement cannot be met.[7]

In *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), the Supreme Court stated that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience, and fairness to litigants ... Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." The Second Circuit itself has articulated "that the retention of jurisdiction for trial of a pendent state law claim on the basis of a federal question claim already disposed of by a Rule 12(b)(6) motion, would be an abuse of discretion absent unusual circumstances ... suggesting some prejudice arising from relegating the case for trial in the state court." *Nolan v. Meyer*, 520 F.2d 1276, 1280 (2d Cir.1975).

At this early pretrial stage of the proceedings, we conclude that dismissal of plaintiff's pendent state law claim is sound and appropriate. Plaintiff himself makes no argument to the contrary. We thus

dismiss plaintiff's state law claim for lack of subject matter jurisdiction.

### CONCLUSION

Defendant's motion to dismiss plaintiff's complaint pursuant to F.R.Civ.P. 12(b)(6) is granted in its entirety because (a) the acts alleged by plaintiff fail to meet RICO's "pattern" requirement[8] and (b) it is appropriate at this stage in the proceedings to also dismiss plaintiff's pendent state law claim.

SO ORDERED.

7. Plaintiff also asserted at oral argument that there was not complete diversity (another requirement of § 1332), but we do not address this assertion because the complaint states neither defendant's state of incorporation nor its principal place of business. Moreover, since one looks to only the representative parties in a class action to determine if complete diversity exists (Wright, Miller & Cooper, *supra*, § 3606 at 424), it would appear that whatever the defendant's "citizenship", complete diversity could

be achieved through some substitution of the representative party.

8. Because we have dismissed plaintiff's RICO claim on these grounds, we need not address defendant's other contentions regarding pleading fraud with the requisite specificity, F.R. Civ.P. 9(b), and RICO's "injury to business or property" requirement. *See* text *supra*.