FRANKLIN & JOSEPH, INC., Plaintiff,

v.

CONTINENTAL HEALTH INDUS-
TRIES, INC., d/b/a Dyna Labs;
et al., Defendants.

CONTINENTAL HEALTH INDUSTRIES,
INC., d/b/a Dyna Labs, Amitol and
Amitol Industries, Inc., Defendant and
Counter-Claimant,

v.

FRANKLIN & JOSEPH, INC., et al.,
Counter-Defendants.

No. 85 Civ. 8756 (RLC).

United States District Court,
S.D. New York.

March 16, 1987.

Putney, Twombly, Hall & Hirson, New York City, for plaintiff and counter-defendants; Harry A. Gottlieb, of counsel.

Ballon, Stoll & Itzler, New York City, Lee H. Harter, Co-Counsel, San Francisco, Cal., for counter-claimant Continental Health Industries, Inc.; Sheldon S. Lustigman, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

This is one of many civil cases testing the meaning of the term "pattern of racketeering activity" as it is used in the Racketeering Influenced and Corrupt Organizations Act ("RICO" or "the Act"), 18 U.S.C. §§ 1961–1968.

Plaintiff Franklin & Joseph, Inc. ("F & J"), a New York corporation, brought this diversity action seeking contractual damages on various grounds. Among the named defendants was Continental Health Industries, Inc. ("Continental"), a California corporation. In a counterclaim, Continental charged F & J and others with two counts of civil RICO violations, as well as common law fraud and conspiracy, and breach of fiduciary duty. The RICO counts allege that counter-defendants violated the Act and conspired to do so, and that Continental has been injured in its business or property by reason of these violations. *See* 18 U.S.C. § 1964(c) (providing for a private right of action). Counterdefendants now move for summary judgment, pursuant to Rule 56, F.R.Civ.P., to dismiss the RICO counts.

## BACKGROUND

The motion for summary judgment, based as it is on the pleadings alone, is functionally the same as a motion pursuant to Rule 12(b)(6), F.R.Civ.P., to dismiss for failure to state a claim, or a motion pursuant to Rule 12(c), F.R.Civ.P., for judgment on the pleadings. *Schwartz v. Compagnie General Transatlantique*, 405 F.2d 270, 273 (2d Cir.1968); 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure*, § 2713 at 594 (2d ed. 1983). Thus, for the sole purpose of deciding this motion, all well-pleaded, material allegations of fact in the counterclaim are taken as true, and contrary assertions in plaintiff's reply are considered false. *See Gumer v. Shearson, Hammill & Co.*, 516 F.2d 283, 286 (2d Cir.1974). *See generally* 5 C. Wright & A. Miller, *Federal Practice and Procedure*, §§ 1368, 1370 at 691–93, 702–04 (1969). The motion for dismissal of the RICO counts must be denied if a claim has been well pleaded. *Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985); *Savastano v. Thompson Medical Co.*, 640 F.Supp. 1081, 1084 (S.D.N.Y.1986) (Sand, J.).

In brief, the pertinent allegations of fact are these: Continental is in the business of marketing Amitol/AM ("Amitol"), a weight-loss product derived from the Japanese konjac root. The company solicits purchases by mail order and toll-free telephone calls.

In January, 1985, Continental entered into an oral, joint-venture agreement with F & J through F & J's president, Roger Franklin. The agreement provided that F & J would take responsibility for placement of all Amitol advertising. F & J was to develop strategy, select the most effective media in which to advertise, and negotiate advertising agreements with the media. In furtherance of these efforts, Continental provided F & J with confidential trade and marketing information.

In May, 1985, however, F & J, Roger Franklin, and his wife Joan Franklin began conspiring with others to defraud and compete unfairly with Continental. Certain of the counter-defendants formed a Florida corporation named National Nutrition Corporation ("NNC"), of which Joan Franklin and her sister Ellen Kreisler became officers. NNC began marketing its own weight-loss product, Capsulite. In doing so, counter-defendants adopted an advertising campaign confusingly similar to that for Amitol in style, wording, use of photographs, and choice of media. Counter-defendants took advantage of the confidential information supplied by Continental in order to develop their own strategy for Capsulite. Similarly, Roger Franklin advised Continental against advertising in certain periodicals where he knew Capsulite advertisements would be placed.

In carrying out the conspiracy to defraud, counter-defendants made frequent use of the United States mails and interstate telephone and telegraph wires. This included F & J's mailing of advertising and billing proposals to Continental, mailing of NNC incorporation papers, mailing of placement orders and payments for Capsulite advertising, telephoning Continental to request marketing tests and strategies, telephoning various news media throughout the country, soliciting purchases of Capsulite by mail order and toll-free telephone calls, and mailing of Capsulite itself. The fraudulent use of the mails and wires continued from May, 1985, through February, 1986.

## DISCUSSION

Continental charges counter-defendants with violating and conspiring to violate section 1962(c) of RICO. To state a claim for such violations, Continental must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (footnote omitted). Counter-defendants do not contest Continental's standing to allege such a violation. *See id.* at 495–98, 105 S.Ct. at 3285–86. Nor do they argue that the facts alleged in the counterclaim fail to establish racketeering activity or conduct of an enterprise. The only issue raised upon this motion is whether the alleged racketeering activity formed a "pattern." According to counter-defendants, any such activity was limited to a single scheme of unfair competition, and the alleged mail and wire fraud violations "were simply ministerial acts performed in the execution of a single fraudulent scheme." Counter-Defendants' Memorandum at 21. By contrast, Continental emphasizes that the "continuous and open-ended scheme" extended over the ten-month period of May, 1985, through February, 1986, and consisted not of isolated or sporadic offenses but of related acts in furtherance of the scheme. Counterclaimant's Memorandum at 7.

The parties' disagreement arises in the context of the larger debate spawned by footnote 14 of the United States Supreme Court's opinion in *Sedima.*[1] Most partici-

1. Footnote 14 provides:

> As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally re-

quires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship.... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern...." 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan). *See also id.* at 35193 (statement of Rep. Poff) (RICO "not aimed at the isolated offender"); House Hearings, at 665. Significantly, in defining "pattern" in a later provision of the same bill, Congress was more

pants in this debate seem to concur in Judge Shadur's belief that footnote 14 has a "plain and deliberate" message: "Lower courts concerned about RICO's expansive potential would be best advised to focus on the hitherto largely ignored 'pattern' concept." *Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.,* 615 F.Supp. 828, 832 (N.D.Ill.1985). Having begun to focus on the "pattern" concept, however, the lower courts have been less able to agree on its meaning. *Compare Soper v. Simmons International, Ltd.,* 632 F.Supp. 244, 253–54 & n. 26 (S.D.N.Y.1986) (Sand, J.) ("pattern" requires multiple racketeering acts occurring in independent criminal episodes) *with Bankers Trust Co. v. Feldesman,* 648 F.Supp. 17, 24–26 (S.D.N.Y.1986) (Conner, J.) ("pattern" means two or more connected racketeering acts).

The great majority of judges in this district have adopted the more restrictive interpretation of "pattern" articulated at length by Judge Sand in *Soper, supra,* 632 F.Supp. at 250–54.[2] In these cases the court has made practical assessments of such factors as the duration of a scheme and the number of victims it reaches in the attempt to determine whether it represented multiple instances of racketeering activity and the threat of continuing activity. *E.g., Savastano v. Thompson Medical Co.,*

640 F.Supp. 1081, 1085–86 (S.D.N.Y.1986) (Sand, J.); *Richter v. Sudman,* 634 F.Supp. 234, 238 (S.D.N.Y.1986) (Goettel, J.).

Under this interpretation, a pattern need not consist of multiple schemes: A single open-ended scheme may be composed of a sufficient number of independent criminal episodes to show the continuity required of a pattern. *Savastano, supra,* 640 F.Supp. at 1085; *Soper, supra,* 632 F.Supp. at 253. However, a single criminal effort, executed by criminal acts that are merely ministerial, is not sufficient to form a pattern no matter how numerous the acts may be. *Savastano, supra,* 640 F.Supp. at 1085–86; *Modern Settings, Inc. v. Prudential-Bache Securities, Inc.,* 629 F.Supp. 860, 864 (S.D.N.Y.1986) (Carter, J.).

This interpretation of "pattern" is not particularly novel. Ten years prior to the Supreme Court's rendering of *Sedima,* Judge Newman suggested in dicta that both common sense and RICO's legislative history seemed to require a narrower interpretation of "pattern" than was then dictated by the law of this Circuit. *See United States v. Moeller,* 402 F.Supp. 49, 57–58 (D.Conn.1975). As Judge Newman put it, "I would have thought the common sense interpretation of the word 'pattern' implies acts occurring in *different criminal episodes,* episodes that are at least somewhat

---

enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e). This language may be useful in interpreting other sections of the Act. Cf. *Iannelli v. United States,* 420 U.S. 770, 789, 95 S.Ct. 1284, 1295, 43 L.Ed.2d 616 (1975).
*Sedima, S.P.R.L. v. Imrex, Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985).

**2.** *See Shopping Mall Investors, N.V. v. E.G. Frances & Co.,* No. 84 Civ. 1469, slip op. at 7–9 (S.D.N.Y. Jan. 29, 1987) (Keenan, J.) [Available on WESTLAW, DCT database] (LEXIS, Genfed library, Dist file); *Baum v. Phillips, Appel & Walden, Inc.,* 648 F.Supp. 1518, 1534–35 (S.D.N.Y.1986) (Leisure, J.); *Sybedon Corp. v. Mendell,* 646 F.Supp. 937, 939–40 (S.D.N.Y.1986) (Haight, J.); *Beck v. Manufacturers Hanover Trust Co.,* 645 F.Supp. 675, 683–85 (S.D.N.Y.1986) (Sweet,

J.); *T. & S. Commodities Inc. v. Becharas Brothers Coffee Co.,* No. 86 Civ. 70 (S.D.N.Y. Sept. 30, 1986) (Owen, J.) [Available on WESTLAW, DCT database] (LEXIS, Genfed library, Dist file); *Bear Creek Productions, Inc. v. Saleh,* 643 F.Supp. 489, 495 (S.D.N.Y.1986) (Weinfeld, J.); *Savastano v. Thompson Medical Co.,* 640 F.Supp. 1081, 1085–86 (S.D.N.Y.1986) (Sand, J.); *Vereins-Und Westbank AG v. Carter,* 639 F.Supp. 620, 624 (S.D.N.Y.1986) (Knapp, J.); *Richter v. Sudman,* 634 F.Supp. 234, 238–39 (S.D.N.Y. 1986) (Goettel, J.); *Frankart Distributors, Inc. v. RMR Advertising, Inc.,* 632 F.Supp. 1198, 1200–01 (S.D.N.Y.1986) (Tenney, J.); *Anisfeld v. Cantor Fitzgerald & Co.,* 631 F.Supp. 1461, 1467 (S.D.N.Y.1986) (Pollack, J.); *Furman v. Cirrito,* No. 82 Civ. 4428 (S.D.N.Y. Mar. 12, 1986) (Cooper, J.) [Available on WESTLAW, DCT database] (LEXIS, Genfed library, Dist file); *Modern Settings, Inc. v. Prudential-Bache Securities, Inc.,* 629 F.Supp. 860, 864 (S.D.N.Y.1986) (Carter, J.). *But see Bankers Trust Co. v. Feldesman,* 648 F.Supp. 17, 24–26 (S.D.N.Y.1986) (Conner, J.); *Conan Properties, Inc. v. Mattel, Inc.,* 619 F.Supp. 1167, 1170 (S.D.N.Y.1985) (Duffy, J.).

separated in time and place yet still sufficiently related by purpose to demonstrate a continuity of activity." *Id.* at 57 (emphasis in original).

Judge Newman's reasoning is consistent with *Sedima's* footnote 14. *Inryco, supra,* 615 F.Supp. at 832 (footnote 14 has vindicated Judge Newman's dicta in *Moeller*); *see* note 2 *supra.* Footnote 14 quotes the same excerpt from RICO's legislative history that Judge Newman invoked in support of his view:

> "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern."

*Sedima, supra,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14 (emphasis in Supreme Court opinion) (quoting S.Rep. No. 91–617 at 158 (1969)); *Moeller, supra,* 402 F.Supp. at 58 (quoting same passage). Similarly, the footnote echoes Judge Newman's appeal to common sense, noting that "in common parlance two of anything do not generally form a 'pattern.'"

Certain dicta from the recent decision of the Court of Appeals for the Second Circuit in *United States v. Ianniello,* 808 F.2d 184, 192 n. 15 (2d Cir.1986), imply disapproval of this view as it has evolved in cases such as *Soper.* *Ianniello's* holding, however, is this:

> [W]e hold that when a person commits at least two acts that have the common purpose of furthering a *continuing criminal enterprise* with which that person is associated, the elements of relatedness and continuity which the *Sedima* footnote construes section 1962(c) to include are satisfied.

*Id.* at 192 (emphasis added). The Court of Appeals reached this ruling in a case involving criminal RICO convictions, and apparently intended to make this context clear by its reference to a "continuing criminal enterprise."

In any event, there is an important difference between the criminal and civil contexts, a difference so important that, as Judge Keenan has recently pointed out, the *Ianniello* holding is inapposite in cases such as the instant one. *Shopping Mall Investors, N.V. v. E.G. Frances & Co.,* No. 84 Civ. 1469, slip op. at 8 n.* (S.D.N.Y. Jan. 29, 1987) (Keenan, J.) [Available on WESTLAW, DCT database] (LEXIS, Genfed library, Dist file) ("*Ianniello* was a criminal case which did not raise the serious problems presented by civil RICO." [citation omitted]); *see Sedima, supra,* 473 U.S. at 527, 105 S.Ct. at 3290 (Powell, J., dissenting) (RICO's generally liberal construction does not necessarily apply to its civil provision); *id.* at 500, 105 S.Ct. at 3292 (Marshall, J., dissenting) (Congress intended a narrow scope for RICO's civil provision); *see also Sybedon Corp. v. Mendell,* 646 F.Supp. 937, 940 (S.D.N.Y.1986) (Haight, J.) (distinguishing *United States v. Teitler,* 802 F.2d 606 (2d Cir.1986), an appeal from a criminal RICO conviction).

Indeed, the *Sedima* majority opinion itself indicates that, in the civil context, a restrictive interpretation of "pattern" is appropriate. Thus, the Supreme Court explained that one of the primary reasons for civil RICO's extraordinary excesses is "the failure of Congress and the courts to develop a meaningful concept of 'pattern.'" *Sedima, supra,* 473 U.S. at 500, 105 S.Ct. at 3287. Congress failed to clarify the limitations posed by the "pattern" requirement, while the courts failed to focus on what limitations Congress did express, limitations which the *Sedima* Court has now brought to the forefront in footnote 14. Had Congress itself intended a broad interpretation of "pattern," redefinition and narrowing of that term would be an improper undertaking for the courts. *See id.* However, the Supreme Court's almost exclusive reliance in footnote 14 on the language and legislative history of RICO, rather than case law, is a sure indication that the restrictive definition which the footnote explains is the work of Congress, not that of any court.

The court recognizes that broad language in footnote 15 of the *Ianniello* opinion suggests a different result, but because

the *Ianniello* "footnote does not rise to the level of holding, it is not controlling." *Ianniello, supra*, 808 F.2d at 190; *Shopping Mall Investors, supra*, slip op. at 8 n.* (distinguishing *Ianniello's* analysis of criminal RICO).

The court accordingly looks to decisions applying the restrictive definition proposed by Judge Newman and reaffirmed repeatedly by this court. *See* note 2 *supra; Moeller, supra*, 402 F.Supp. at 57–58. Judge Sand's opinion in *Savastano v. Thompson Medical Co.*, 640 F.Supp. 1081 (S.D.N.Y.1986) (Sand, J.), is particularly helpful because the facts of that case are strikingly similar to those alleged here.

In *Savastano*, a weight-loss product manufacturer allegedly had engaged in false marketing and advertising. The plaintiff, seeking to represent a class of allegedly defrauded consumers of the appetite suppressants, argued that this false marketing scheme formed a pattern of racketeering activity because it

> "(a) defrauded thousands of persons each day for years, (b) was cut short after twenty months only when the executioner's axe began to descend in an injunctive suit by a competitor, (c) involved thousands of abuses of the mails and wires in furtherance of the scheme, and [ (d) ] was orchestrated by the same defendant."

*Savastano, supra*, 640 F.Supp. at 1085 (citation omitted). Judge Sand noted that the alleged criminal activity logically had to be viewed "as an attempt to intentionally misrepresent through packaging and advertisements the performance of a single product." *Id.* "As such," he concluded, "it could best be characterized as 'a single fraudulent effort, implemented by several fraudulent acts,' ... and is insufficient to meet RICO's 'pattern' requirement." *Id.* (quoting *Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.*, 615 F.Supp. 828, 831 (N.D.Ill.1985)).

Continental likewise has alleged a unitary attempt fraudulently to advertise one product, Capsulite. In fact, the criminal activity alleged here is less extensive and poses less of a threat of continuing activity than that in *Savastano.* The scheme lasted ten months rather than "years." The primary harm of which Continental complains was to its own business rather than to a class numbering in the "thousands ... each day." The scheme undoubtedly had many fewer victims, because Continental's allegedly wrongful competitor is a fledgling corporation, formed at the earliest in May, 1985, as opposed to a manufacturer controlling 55 percent of the market. *See Savastano, supra*, 640 F.Supp. at 1082.

Needless to say, these considerations do not mitigate the wrongfulness of the alleged criminal activity. For present purposes, however, the only issue is whether Continental adequately has alleged more than one instance of racketeering activity and the threat of continuing activity. *See Sedima, supra*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14 (quoting S.Rep. No. 91–617 at 158 (1969)); *Savastano, supra*, 640 F.Supp. at 1085–86. Continental has failed to plead more than one "racketeering activity," because the fraudulent advertising scheme amounted to one episode, implemented by numerous, perhaps thousands, of ministerial acts of mail and wire fraud. *See id.* at 1085 (quoting *Inryco, supra*, 615 F.Supp. at 831); *Modern Settings, Inc. v. Prudential-Bache Securities, Inc.*, 629 F.Supp. 860, 864 (S.D.N.Y.1986) (Carter, J.) (liquidation of margin account was a single episode, not a pattern of racketeering activity, "regardless of the number of sales required to consummate it"). Continental also has pleaded insufficiently a threat of continuing criminal activity, since "the withdrawal of [Capsulite] from the marketplace would 'spell the limit of [counter-defendants' allegedly] fraudulent scheme.'" *Savastano, supra*, 640 F.Supp. at 1086 (quoting *Kredietbank N.V. v. Joyce Morris, Inc.*, No. 84–1903, slip op. at 15 (D.N.J. Oct. 11, 1985) [Available on WESTLAW, DCT database] (LEXIS, Genfed library, Dist file)). In each of these respects, Continental has not alleged the continuity required of a RICO pattern.

Counts 1 and 2 of the counterclaim, the RICO counts, therefore must be dismissed. The motion for summary judgment, con-

725

strued as a motion to dismiss or for judgment on the pleadings, accordingly is granted.

IT IS SO ORDERED.